## Chesapeake & Ohio Railway Co. v. Plummer.

(Decided April 12, 1911.)

### Appeal from Lewis Circuit Court.

1. Railway Companies—Liability for Injury to Shipper Engaged in Loading or Unloading Cars.—When a railway company places a car on its tracks for the purpose of being loaded or unloaded by the owner of the property contained in or being put in the car, the persons who are engaged in loading or unloading the car are rightfully upon the premises of the company, and it owes them the duty of exercising ordinary care to avoid injury to them if the fact that they are engaged in or about the car is known or in the exercise of ordinary care could have been known to the trainmen.

2. Notice to Company—Duty of Trainmen.—Before moving or disturbing a car in or about which persons are engaged in loading or unloading, it is the duty of trainmen if the station agent knows or if they know or in the exercise of ordinary care could know that such persons are engaged in or about the car to give them reasonable notice before moving or disturbing the car; and if a person so engaged in loading or unloading a car is injured by the negli-

gence of the company or its employes, it will be liable in damages for any resulting injury, unless the injured party is guilty of such contributory neglect as would defeat a recovery.

WORTHINGTON, COCHRAN & BROWNING for appellant.

ALLEN D. COLE, S. J. PUGH and A. R. CAMPBELL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

While the appellee Plummer was engaged in placing tan bark in a car of the appellant company, which was standing on the "house track" at Vanceburg, the car in which he was working was struck by a moving car— the result being that he was thrown down and severely injured. To recover damages for the injuries thus sustained, he brought this action, and upon a trial the jury gave him $1,500.00. A reversal is asked, first: Because the court refused to direct a verdict for the appellant, and second: for error in giving and refusing instructions.

The facts are in substance these: At Vanceburg the appellant company has a main track, a passing track, and what may be called a house track. On this last named track a car had been placed for the purpose of loading it with tan bark. While Plummer, and other employes of Grant Fryer, who had engaged the car and was shipping the tan bark, were engaged inside the car, placing the tan bark, a freight train going east stopped at ·the· depot to do some switching. In the course of this work it became necessary to move the car in which Plummer was working out on the main track, and after this was done the car was again placed at the·point where it stood before it was moved. After being thus located the trainmen desiring to put another car on the house track, made what is called a "running switch", and sent the car which was detached from the engine at a rapid rate of speed in on the house track. There was a brakeman on this moving car, but he was unable to control it, and it struck with great force the car in which Plummer was working. There is no evidence that Plummer or any other person engaged in loading the car knew that a car was going to be run in on the house track, or that the car they were engaged in loading would be moved a second time, until just a moment before the car in which Plummer was working was struck when one of his co-laborers gave warning of its approach, but it was then too late for Plummer to leave the car or escape injury. The station agent of appellant knew at the time and before the car was moved that Plummer and others were

engaged in loading the car, as he had been requested by them to notify the crews of passing trains not to disturb the car while it was being loaded, and we think this notice to him was notice to the company, and its employes in charge of trains that might desire to move the car. But, aside from this, as the doors of the car were open, and the trainmen had previously moved it and had passed by the open doors, it is fair to assume that they knew that the car was being loaded. But, whether the trainmen had actual knowledge of this fact or not, certain it is that by the exercise of ordinary care they could have known it, and so both by the information in the possession of the station agent as well as the knowledge on the part of the trainmen it is clear that the company had notice that men were engaged in loading the car.

The petition did not specify any particular negligence that the employes of the company were guilty of—merely charging in a general way that while Plummer was engaged in loading the car he was injured by the carelessness and negligence of the servants of the company in running another car violently against the car in which he was working. In an amended petition it was stated that by reason of the negligence complained of, Plummer had been disabled and prevented from working for the space of one year and was still disabled, and permanently so.

There is really no issue of fact made concerning the manner in which Plummer was injured. It is not disputed that he was engaged in placing the tan bark in the car at the time it was struck by the moving car, nor is it denied that this car was moving at a rapid rate or that it struck with great force the car in which Plummer was. With the evidence in the condition stated, the court instructed the jury that—

"If they believe from all the evidence that the defendant railway company furnished Grant Fryer the car in which the plaintiff was at work for the purpose of loading and shipping tan bark, or permitted said car to be so used, and that the plaintiff under his employment to help load tan bark on said car was engaged in his duties of preparing said car for shipment of said tan bark, and that while so engaged the defendant by its employes carelessly and negligently ran one or more cars against or carelessly or negligently permitted the same to run onto or against the car in which the plaintiff was so engaged, and thereby inflicted personal injury upon

the plaintiff, then they will find for him such a reasonable sum in damages, if any, as they may believe from the evidence he has sustained in efforts to get cured, including any expense that it is reasonably certain he will here after necessarily incur, if any, not exceeding One Hundred Dollars; also the fair value of the time lost by him, if any, or which it is reasonably certain he will hereafter lose, if any; and a fair compensation for the mental and physical suffering, if any, endured by him or which it is reasonably certain he will endure; also for the permanent reduction of his power to earn money—not exceeding Five Thousand Dollars.''

In another instruction the jury were told that—

''Unless the jury believe from the evidence the proposition set forth in the first instruction, they should find for the defendant.''

No other instructions were given except those defining ''negligence'' and ''ordinary care'', although a number were offered by counsel for the railway company.

In cases like this the principles of law applicable are very well settled. When a railway places a car on one of its tracks for the purpose of being loaded or unloaded by the owner of the property contained in or being put in the car, the persons who are engaged in loading or unloading are rightfully upon the premises of the company; and it owes to them the duty of exercising ordinary care to avoid injury to them, if the fact that they are engaged in or about the car is known to the station agent or is known or in the exercise of ordinary care should be known by the trainmen. The knowledge of the station agent will be imputed to the trainmen, as when he knows that a car is being loaded or unloaded he should notify train crews of this fact. Therefore, before moving or disturbing a car in or about which persons are so engaged, it is the duty of trainmen, if the station agent knows or if they know or in the exercise of ordinary care could know, that such persons are engaged in or about the car, to give them reasonable notice before moving or disturbing the car. And if, a person so engaged in loading or unloading a car is injured by the negligence of the company or its employes, whether the negligence consists in moving the car without notice or in failing to exercise ordinary care towards him in other respects, it will be liable in damages for any resulting injury, unless it be that the injured party is guilty of such contributory neglect as would defeat a recovery. Of course,

if the person loading the car has reasonable notice that it will be moved, he must take care to avoid being hurt; but, if he has given notice to the station agent or the trainmen of his presence, or the trainmen know or in the exercise of ordinary care could know of his presence, then he need not be on the lookout for danger. Applicable to the facts of this case, we said in L. & N. R. R. Co. v. Farris, 30 Ky. L. R., 1193—

"The defendant had placed the car on the side track for the purpose of the safe being unloaded from the car by the servants of the bank, and the fact that they were there unloading the safe was known to those in charge of the train. When those in charge of the train undertook to move the car under these circumstances, if they failed to notify the men in the car to get out, the defendant is responsible to the plaintiff if he was injured by reason of a collision between the cars when the defendant was moving them as above stated. On the other hand, if the conductor warned the plaintiff to leave the car as he was preparing to move it, the plaintiff remained in the car at his own risk, and the defendant is not liable. In other words, if the defendant moved the car without notice to the plaintiff to get out, it took the risk; but if it notified him to get out and he remained in the car or returned to it after getting out, he took the risk." To the same effect is L. & N. R. Co. v. Smith, 27 Ky. L. R. 257; L. & N. R. Co. v. Crow, 118 S. W. 365; C. & O. Ry. Co. v. Conley, 136 Ky. 601.

Applying to the facts that are virtually undisputed these principles of law, there can be no doubt that the company was guilty of negligence, and it is equally plain that Plummer did not do anything that contributed to his injuries. Before and at the time the running switch was made, the station agent knew and the trainmen knew or in the exercise of ordinary care could have known that Plummer and others were engaged at work in the car; and neither Plummer, nor his co-laborers, knew that the running switch would be made or that a car would be caused to collide with the car they were in, until it was too late to escape. It is thus made clear that the court did not commit error in refusing to submit to the jury the question of contributory neglect on the part of Plummer, or the fact that he could not recover if he knew or by the exercise of ordinary care could have known that the car he was in would be struck or moved by the other car. There was no evidence to warrant either of these instruc-

tions, or any other than those given. The truth is that so far as the question of negligence or contributory negligence is concerned, the company had no defense.

The point is raised by counsel that it was error to instruct the jury that they might allow damages on account of lost time. This objection is rested upon the ground that the pleadings did not seek a recovery on this account, but we think the amended petition, although not as specific as it should be, authorized an instruction upon this question.

Perceiving no error in the judgment, it is affirmed.