## Louisville & Nashville Railroad Company v. Payne's Administrator.

(Decided October 30, 1917.)

### Appeal from Bullitt Circuit Court.

1. Master and Servant—Action for Death—Negligence—Evidence—Sufficiency.—In an action for the death of a car repairer, evidence examined and held to make a question for the jury as to whether defendant's negligence was the proximate cause of decedent's death.

2. . Master and Servant—Railroads—Duty to Car Inspectors and Repairers.—In railroad yards where many men are employed and several trains come and go each day and a great deal of switching is done and numerous cars must necessarily be inspected and repaired by men who frequently go under or between the cars

for a short period of time, the railroad company is under the humane duty to anticipate the presence of such employes under or between the cars and to take such precaution for their safety as a proper lookout and timely warning of approaching cars will afford, and this duty is owing whether the injured employe does or does not protect himself by means of a blue flag as required by the company's rules, and particularly so where there is substantial evidence that the rule requiring such action on his part was habitually disregarded with the acquiescence of the company.

3. Master and Servant—Railroads—Duty to Car Inspectors and Repairers—Negligence—Contributory Negligence.—Where a railroad company owes to a car inspector and repairer a lookout and warning duty notwithstanding his failure to protect himself by a blue flag in accordance with the company's rules, such failure can not be regarded as the sole cause of his death, but might constitute contributory negligence going to the diminution of damages.

4. Master and Servant—Action for Death—Instructions.—In an action for the death of a car repairer, instructions considered and held not subject to the complaint that there was no evidence to support them.

5. Master and Servant—Railroads—Evidence—Prejudicial Error.— Where in an action against a railroad company for the death of a car repairer, the instructions made a lookout and warning duty depend solely on the extent of the use of the yards by the company's employes, the admission of evidence of the use of the company's yards by persons other than its employes, was not prejudicial.

6. Master and Servant—Federal Employers' Liability Act—Measure of Damages—Instruction—Error—Waiver.—In an action for death under the Federal Employers' Liability Act, the defendant can not complain of the court's failure to limit the damages to the present cash value of future benefits where no instruction to this effect was offered by the defendant and the given instruction did not limit the right of the jury to fix the damages on that basis.

BENJAMIN D. WARFIELD for appellant.

DAUGHERTY & FULTON, FRANK E. DAUGHERTY, C. P. BRADBURY and ERNEST N. FULTON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

N. B. Bowling, as administrator of J. T. Payne, deceased, brought this suit under the Federal Employers' Liability Act, against the Louisville & Nashville Railroad Company, to recover damages for his death. The jury returned a verdict in his favor for $5,050.00, of which sum they apportioned $5,000.00 to the decedent's

widow, and $50.00 to his daughter. Judgment was entered accordingly and the railroad company appeals.

According to appellee's evidence, appellant is an interstate carrier, and at the time of his death decedent was in its employ as car inspector and repairer. At about 6 o'clock on the morning of the accident, which occurred on October 25, 1915, J. R. Carpenter, the company's chief car inspector, met decedent and said, ''53 is called.'' This was an order to the decedent to inspect the cars and see that they were ready to go out. These cars were assembled on track No. 1, in the Lebanon Junction yards, and 53 was an interstate train. About 8 o'clock that morning train No. 18 arrived at Lebanon Junction from Bowling Green. At that time there were eight empty cars on track No. 1. After doing some other switching the engine on train No. 18 pushed a cut of four cars on to the north end of track No. 1. Two attempts were made to couple this cut of cars to the eight cars already on that track, but because of some defect in the apparatus the coupling was not made. During this movement the eight cars were shoved for a distance of about three or four car lengths. After this movement, decedent was found dead under the south trucks of the sixth car from the north end and the third car from the south end, with one of his legs wedged between the arch bars and the wheel. While the cut of four cars was being shoved on track No. 1, no employe was on the front car. There was also evidence to the effect that no signal of the approach of the four cars was given. It was further shown that the tracks in the yards of the company at Lebanon Junction were used by a large number of employes. Though the rules of the company require that a workman going under or between cars should protect himself with a blue flag, Bates, the yardmaster, testified that the inspectors were not in the habit of placing blue flags when inspecting trains and that this custom had prevailed for a number of years. It was also shown that it was the custom in the yards when coupling an engine and cars to a cut of dead cars, to send a brakeman ahead to inspect the cut of cars.

According to the evidence for the company, the chief car inspector gave the decedent no order with reference to train 53 and decedent had no duties to perform in connection with the cut of cars on track No. 1. As a matter of fact, they had been inspected the night before by an employe charged with that duty. It was further

shown that the eight cars in question did not go out on train 53 that day, but constituted a part of another train. It was not customary for the whistle to be blown under such circumstances, but the bell on the engine was ringing as the engine backed into the cars. If decedent was under or between the cars he could not have been seen, otherwise he could have been seen. The head brakeman looked down both sides of the eight cars, but did not see anybody. If the decedent was under or between the cars, it was his duty to protect himself with a blue flag. The company had no rule requiring trainmen or switchmen to look out for car repairers who did not protect themselves in this manner.

1. The first ground urged for a reversal is that the case should not have gone to the jury because appellee failed to prove that the decedent's death was due to any negligence on the part of the company. In this connection it is argued that the evidence utterly fails to show for what purpose, or under what circumstances, or at what time, the decedent went under or between the cars and that the case therefore falls within the well-recognized rule, that where the decedent's death may as well be attributed to a cause for which the company was not responsible, as to a cause for which it was responsible, the company's liability should not be made a matter of mere conjecture on the part of the jury. L. & N. R. R. Co. v. Long's Admr., 139 Ky. 304, 117 S. W. 359; Louisville Gas Co. v. Kaufman & Straus Co., 105 Ky. 131, 48 S. W. 434.

With this contention we cannot agree. There was positive evidence that the decedent was notified that No. 53 had been called, and that this notice was equivalent to an order to inspect the cars which were to compose that train and see that they were in condition to go out. The cars which went out on that train were usually assembled on track No. 1. Decedent's body was found wedged between the arch bars and the wheels of one of the cars assembled on that track. Having been directed to work there, it is a fair and reasonable inference that at the time of the accident, he was engaged in the performance of his duties. The theory of suicide is not to be entertained. The peculiar position of decedent's body is sufficient to justify the conclusion that his injuries did not take place while the cars were standing still, but were due to the admitted movement of the cars, and as there was evidence tending to show that

this movement was caused by their contact with the cut of cars which the company had backed on the track in question without keeping a proper lookout or giving timely warning of their approach, it was for the jury to say whether the company's negligence was the proximate cause of decedent's death.

It is further insisted that the company did not owe decedent any duty because of his failure to apprize its employes of his presence under or between the cars by means of a blue flag, as required by the company's rules. There may be cases where no duty arises until the employe places the warning signal, but these are cases where the company is under no obligation to anticipate the presence of such employe. Kentucky & Tennessee Ry. Co. v. Minton, 167 Ky. 516, 180 S. W. 831. We are not prepared, however, to hold that in every instance the railroad company has discharged its full duty to its car inspectors and repairers whose work is of a peculiarly hazardous character, by merely promulgating a rule requiring them to protect themselves by placing a certain flag. In yards like those at Lebanon Junction, where many men are employed and several trains come and go each day and a great deal of switching is done and numerous cars must necessarily be inspected and repaired by men who frequently go under and between the cars for but a short period of time, we conclude that the company is under the humane duty to anticipate the presence of such employes under or between the cars and to take such precautions for their safety as a proper lookout and timely warning of approaching cars will afford; and this duty is owing whether the injured employe protects himself by means of a blue flag or not, and particularly so, where, as in this case, there was substantial evidence that the rule requiring such action on his part was habitually disregarded with the acquiescence of those employes of the company superior in authority to the injured employe. C., N. O. & T. P. Ry. Co. v. Lovell's Admr., 141 Ky. 249, 132 S. W. 569; L. & N. Ry. Co. v. Johnson's Admr., 161 Ky. 824, 171 S. W. 847; Norfolk & Western Ry. Co. v. Short's Admr., 171 Ky. 647, 188 S. W. 786.

But it is suggested that decedent assumed the risk of injury because of his failure to put out a blue flag, and is therefore not entitled to recover. Of course, it might be said that decedent's failure to put out a blue flag was the sole cause of his injuries, if the company

owed him no lookout or warning duty in the absence of the flag, and the rule requiring him to protect himself in that manner had not been habitually disregarded with the acquiescence of the company. In view, however, of our conclusion that the company owed him a lookout and warning duty, notwithstanding his failure to observe the rule, it is clear that such failure cannot be regarded as the sole cause of his death, but might constitute contributory negligence going to the diminution of damages. This view of the law is well presented by the given instructions. Instructions Nos. A-2 and A-3, submitted the question whether the company owed decedent a lookout and warning duty and whether or not its failure to perform either of these duties was the proximate cause of decedent's death. Instruction A-4 submitted the issue of contributory negligence. By instruction B No. 1 the jury were told that if they believed from the evidence that decedent was concealed from view at the time of his injuries, and that he placed no blue flag on the ends of the cars, they should find for the defendant, unless they believed that the rule with reference to the placing of the blue flag was habitually disregarded with the acquiescence of the company, and should further believe as in instruction A-3. These instructions are assailed on the ground that the company was entitled to a peremptory and there was no evidence to support them. This contention cannot be sustained for the reasons heretofore pointed out.

Complaint is made of the introduction of evidence of the use of the company's yards by persons other than its employes. This was not prejudicial, because in the instructions the lookout and warning duty was made solely to depend on the extent of the use of the yards by the company's employes.

Lastly, it is insisted that the instruction on the measure of damages is erroneous and that the verdict is excessive. The instruction on the measure of damages is attacked on the ground that it fails to limit the recovery to the present cash value of the future benefits of which the beneficiaries were deprived by the death of the decedent. By the given instruction the jury were told to fix the damages ''in such an amount in money as will fairly and reasonably compensate the widow, Mrs. Mattie E. Payne, and the daughter, Miss Carrie Payne, of the said J. T. Payne, deceased, for the loss of pecuniary benefits they might have reasonably received if the

deceased had not been killed.'' There is nothing in this instruction that limits the right of the jury to fix the damages at the present worth of future benefits. That being true, and the company having failed to offer an instruction to that effect, it cannot complain of the instruction given. I. C. R. Co. v. Skinner's Admrx., 177 Ky. 62; C. & O. Ry. Co. v. Kelly's Admrx, 241 U. S. 485; C. & O. Ry. Co. v. Shaw, 168 Ky. 537; N. C. & St. L. R. R. Co. v. Henry, 168 Ky. 453; Phoenix R. Co. v. Landis, 231 U. S. 578; Greenway v. Taylor County, 144 Iowa 332; Clark v. City of Cedar Rapids, 129 Iowa 358; L. & N. Ry. Co. v. Morris, 179 Ala. 239; Fedorawicz v. Citizens Electric Illuminating Co., 246 Pa. 141. Nor can we say that the verdict is so excessive as to strike us at first blush as being the result of prejudice or passion.

Judgment affirmed.