## Payne, Agent v. Wallace's Administrator.

(Decided December 15, 1922)

### Appeal from Campbell Circuit Court.

1. Railroads—Injuries to Licensees—Persons Working on Cars—Duty.—Where a railroad company knows of the custom of a steel company to place its employes on cars on tracks jointly used by the steel company and railroad company for the purpose of marking billets, the company is under the duty to anticipate their presence and to exercise ordinary care to avoid injuring them.

2. Railroads—Injuries to Licensees—Persons Working on Cars—Question for Jury.—Evidence that it was the custom of a steel compnay to place its employes in cars on switching tracks jointly used by the company and the railroad for the purpose of marking steel billets, and that this custom had existed for a period of six months, was sufficient to make the existence of the custom and knowledge thereof by the railroad employes a question for the jury.

3. Railroads—Injuries to Licensees—Person Working on Cars—Trial—Instructions.—Where in an action for the death of an employe of a steel company who was engaged in marking steel billets in a car on tracks jointly used by the steel company and the railroad company, the evidence whether the railroad company had knowledge of the steel company's custom of sending its men to the cars

to mark such billets was conflicting, it was prejudicial error to assume in an instruction that the railroad company had such knowledge, and to impose on it the consequent duty to use ordinary care to discover the presence of deceased on the car.

B. D. WARFIELD and JAMES C. WRIGHT for appellant.

JOHN D. CARROLL, BRENT SPENCE and L. S. SHEPLER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Robert Wallace's administrator sued the Director General of Railroads to recover damages for his death. From a verdict and judgment in favor of plaintiff for $12,500.00 John Barton Payne, agent of the President of the United States, has appealed.

Wallace, who was 17 years of age, was working for the Andrews Steel Company, whose plant is located in Campbell county, along the line of the L. & N. R. R. Parallel to the company's main track are two switching tracks, known as interchange tracks, which are used jointly by the railroad and the steel company in the interchange of freight. Each of these tracks holds about thirty cars and is connected with the main track at both the north and south ends. Track No. 1, which is next to the main line, is used principally for inbound business, while track No. 2 is used for outbound business. On the day of the accident the fourth gondola car from the south end of track No. 2 had been loaded with steel billets which were to be shipped to the French government. The billets were not ready for shipment, but had to be stamped and marked before they went forward. According to the custom which had prevailed for several months, Wallace, who usually did such work, was sent to mark the billets in the car in question. The billets weighed about a thousand pounds each and were loaded in two piles, one in each end of the car. The billets were from two to three feet in height and were placed about three feet from each end of the car. On the car was a card directing the railroad switching crew not to take the car forward but to set it over on track No. 1. While Wallace was in the north end of the car marking the billets the switching crew ran the engine into track No. 2, and after making the necessary couplings pulled the car in which Wallace was working, together with the three or four cars between it and the engine, out to the main track, and then kicked the car in which Wallace was

working into track No. 1.    After moving six to eight car lengths, the car collided with other cars on the track with such force that the billets shifted and were thrown against the north end of the car, thus crushing Wallace's legs and causing his death.    It was shown that these billets were piled in the usual manner and would not have shifted if the car had not been kicked with unusual and excessive force.    Though the car was a gondola, its sides were about four feet high, and it was necessary for Wallace to lean over, in order to do the marking and stamping.    Shortly before the accident Wallace was seen in the car by the assistant terminal master of the Andrews Steel Company.    While the engineer says that he did not see Wallace before that time, he admits that he saw him standing up in the car just after the car was kicked and could have seen him when he first pulled the car out.    The brakeman, Henry Carroll, also says he saw Wallace in the car after it was kicked and when the car was about a car's length from the car which it struck.    He thought that Wallace was the yard clerk and called to him to jump off, at the time saying, "That boy is going to get hurt if he don't jump off."    There was further evidence to the effect that the ability of the engineer and fireman to see Wallace depended upon the circumstances, such as whether Wallace was standing up or leaning over, or the engine was on the outside of the curve, etc.

It may be regarded as settled law that where a car is placed on a railroad track for the purpose of being loaded, unloaded or repaired, the company is under the duty to anticipate the presence of persons on or about the car for that purpose, and to take proper precautions for their safety, not only by giving reasonable warning of any intended movement of the car, but by exercising ordinary care in the movement of the car itself.    Southern Ry. Co. in Kentucky v. Goddard, 121 Ky. 567, 89 S. W. 675, 12 Ann. Cas. 116; L. & N. R. R. Co. v. Crow, 118 S. W. 365; L. & N. R. R. Co. v. Hay's Admr., 145 Ky. 655, 141 S. W. 64; C. & O. R. Co. v. Plummer, 143 Ky. 97, 136 S. W. 159.    Whether or not the company is under the duty to anticipate the presence of other persons on or about the car depends on whether the facts are sufficient to charge it with notice.    L. & N. R. Co. v. Hurst, 132 Ky. 121, 116 S. W. 291.    It cannot be doubted that if it was the custom of the steel company to send its employes to the interchange tracks for the purpose of marking steel billets, and this custom was known to the railroad com-

pany, the latter was under the duty to anticipate their presence and to exercise ordinary care to avoid injuring them.  The only difficulty with the case grows out of the fact that the court instructed the jury in substance that if they believed from the evidence that the servants and agents of the company knew, or by the exercise of ordinary care could have known, that decedent was on the car in time to have prevented injury to him and failed to exercise ordinary care for his safety, and by reason of such failure, if any, caused his injury and death, they should find for plaintiff, thus assuming, as a matter of law, that the steel company's custom of placing its employes on the cars to mark the billets was known to the railroad company, and that the latter was under the consequent duty to exercise ordinary care to discover the presence of such employes on the cars.  It was shown by several witnesses that it was the custom of the steel company to send its men to the cars to mark the billets, and that this custom had existed for several months.  This evidence was sufficient to take the case to the jury on the question of knowledge, but, in view of the fact that all of appellant's employes, with the exception of the yard clerk, who on one occasion observed an employe of the steel company in a car that was protected by a red flag, testified that they had never seen an employe of the steel company in a car on the track for outbound freight, and further testified that the members of the switching crew only worked at the steel plant for a short time each day, it cannot be said, as a matter of law, that appellant's employes had knowledge of the custom.  That being true, the instruction was erroneous.

On the return of the case appellee will be permitted to amend his petition and allege the custom and knowledge thereof by appellant, its agents and servants, and the court will submit these questions to the jury and make the duty of the members of the switching crew to anticipate the presence of decedent in the car and to use ordinary care in the movement of the car dependent on an affirmative answer.

We find no other error in the record.

Judgment reversed and cause remanded for new trial consistent with this opinion.