## Payne, Agent, et al. v. Raymond's Administrator.

(Decided March 2, 1923.)

## Appeal from Harrison Circuit Court.

1.  Railroads—Director General Alone Liable for Negligence During Federal Control.—The Director General alone is liable for damages from the negligent operation of a railroad during the federal control of railroads, so that judgment against the railroad company for such negligence cannot be sustained.

2.  Appeal and Error—Judgment Against Director General Need Not be Reversed Because Also Rendered Against Company.—A judgment against the Director General of Railroads, for injuries caused by his negligent operation of a railroad, need not be reversed, because the trial was erroneously allowed to proceed to verdict and judgment against the Director General and the railroad company jointly.

3.  Railroads—Person Under Car Unloading Coal Entitled to Warning.—The duty of a railroad company to warn a person engaged in unloading a car, before it moves the car, is not limited to a person who is working within the car, but includes also. one who was under a hopper car, removing the coal which had been dumped therefrom, if that was a customary method of unloading coal from such cars, so that the railroad employes were charged with notice that a person unloading the coal might be in that position.

4.  Railroads—Contributory Negligence of Person While Unloading Coal Car Held for Jury.—Evidence held to show that decedent, while underneath the car, with the upper portion of his body extending through the hopper into the car, was unloading the car in the manner usually followed and of which custom the railroad, through its local agent, had actual knowledge, so that it was liable for his death resulting from the movement of the car, without giving him warning, and he was not contributorily negligent, as a matter of law, in occupying that position.

5.  Trial—Admission of Evidence is Cured by Subsequent Introduction of Similar Evidence by Opposite Party.—Error, if any, in permitting plaintiff to introduce evidence as to the custom of the railroad in operating cars where the accident happened, was waived, where the defendant introduced the conductor of the train which caused the accident, and proved by him precisely the same custom.

6.  Death—$2,000.00 for Death of Negro 70 Years Old Held Not Excessive.—A verdict awarding $2,000.00 as damages for the death of a negro 70 years of age was not excessive, where it appeared he was sober and industrious, and, though his fingers were crippled

and he was somewhat enfeebled by his age, he was earning $2.00 a day at the time of his death.

B. D. WARFIELD, EMMETT M. DICKSON and HANSON PETER-SON for appellants.

M. C. SWINFORD for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

This is an appeal from a judgment awarding appellee $2,000.00 damages for the death of his intestate, Clay Raymond, who was killed in appellants' railroad yards at Cynthiana, Kentucky, August 22, 1919, and while he was engaged in unloading a coal car standing on a switch track.

Although the accident occurred during Federal control, as is alleged in the petition and shown by the evidence, the railroad company was sued jointly with the Director General of Railroads, and a joint judgment rendered against both, despite the efforts of defendants in every available way to have the action dismissed as to the railroad company. That the Director General alone is liable for the negligence, if any, which caused the death, has been fully settled since this case was tried. Commonwealth v. L. & N. R. R. Co., 189 Ky. 309, 224 S. W. 847; L. & N. R. R. Co. v. Fields, Sr., 197 Ky. 135.

Hence the judgment against the railroad company must be reversed, but there is no merit in the further contention that the judgment against the Director General must also be reversed because the trial was erroneously allowed to proceed to verdict and judgment against the two defendants jointly, as was expressly held by this court under like circumstances in the last of the two cases, *supra*

It is next insisted that the court erred in overruling the Director General's motion for a directed verdict. In support of this insistence, it is urged (1) that there was no evidence of negligence upon the part of the defendant, and (2) that decedent was guilty of contributory negligence as matter of law.

The yards at Cynthiana consist of a track known as the "house track," running nearly north and south, and five switch tracks leading therefrom in a northeasterly direction, at the end of each of which there is a heavy bumper-post. These latter tracks are numbered from the

north, and at the time of the accident decedent was under
a gondola car on track No. 2, shoveling out coal that had
been dumped on the track beneath the car by opening the
doors of the hopper in the bottom of the car, when the
car was struck by an engine in a switching movement.

Conceding that if decedent had been in the car and
engaged in unloading it the defendant would have been
bound to anticipate his presence and give him reasonable
notice that the car was about to be moved, it is insisted
for the defendant that it owed decedent no such duty be-
cause he was under the car and at a place where his pres-
ence could not reasonably have been anticipated. In sup-
port of this position many cases from this and other
courts are cited, holding that a railroad company owes
no duty to a trespasser, licensee, or employe, who, for
purposes of his own, goes between or under cars
which he ought to know are liable to be moved at any mo-
ment, except not to injure him after his presence or peril
is discovered. But it is apparent none of these cases pre-
sents facts anything like those here.

The cars upon track No. 2 had been placed there by de-
fendant for the very purpose that the consignees might
unload them, and, as already stated, counsel admit the
defendant was bound to anticipate the presence of
persons *in* these cars for the purpose of unloading them,
and to give them reasonable notice before moving the
cars, but insist that decedent's presence under the car
need not have been anticipated, and he was therefore not
entitled to notice before the car was moved, simply be-
cause he was under the car and not in it, regardless of the
purpose of his presence.

To us these positions seems utterly inconsistent, and
the latter wholly untenable, since in our confident judg-
ment the question of whether plaintiff's presence ought to
have been anticipated, with the resultant duty of notice
to him before the car was moved, depends not at all
upon whether he was in, on, by the side of, or under the
car, but solely upon whether or not, at the time, he was
engaged in unloading it in accordance with a custom of
which defendant knew or ought to have known.

The man who is standing just outside of an open door
of a car, helping to unload it, is certainly as much entitled
to notice that it is going to be moved as the man inside
who is handing out to him the contents of the car. And
so, too, is every person engaged in unloading the car,
whatever position he is required to assume with reference

to the car in unloading it, that is customarily adopted in so doing, and of which the railroad company has actual or constructive knowledge.

There cannot possibly be any reasonable distinction made because of the position with reference to the car the person must or may assume in unloading it in the usual customary way.

The fact that the decedent, at the time he was killed by an engine violently backing against the car he was engaged in unloading, was standing on the ground underneath the car with the upper portion of his body extending through the hopper into the car, or was stooping entirely under the car—a fact not made clear by the evidence—it seems to us is wholly immaterial, since it is established without contradiction that at the time he was engaged in unloading the car for the consignee, in the manner that was usually followed, and of which custom the railroad company, through its local agent, had actual knowledge.

It was not only shown that for many years it had been the custom of consignees to unload such cars in this manner, but that the local agent had followed this same method in removing the coal from the hoppers of such cars when the company desired to remove the car before the consignee had finished unloading it.

As the defendant admits that if the deceased had been in the car the evidence was such that the questions of whether or not he was there for the purpose of unloading it, and was given reasonable notice of an intention to move the car, were for the jury, it will not be necessary for us to recite the evidence upon either question, since we are clearly of the opinion that he was entitled to the same notice while engaged in unloading the car from beneath it, in accordance with the custom that had prevailed at that place for many years and with the knowledge of the defendant, as if he had been in it.

For the very same reason it is apparent that the decedent was not guilty of contributory negligence as matter of law in being under the car for the purpose of unloading it in the customary way, and it follows that the court did not err in refusing defendants' motion for a directed verdict.

These conclusions also dispose of the complaint made of the instructions given, since the only objection to them, as stated in the brief, is that they "erroneously treated

the duty of appellants' employes as to decedent while he was under the car as exactly the same as it would have been if he had been in the car unloading coal therefrom."

Another contention of the appellants is that the court improperly permitted appellee to introduce testimony as to the custom of the railroad in operating trains and cars on the siding at Cynthiana, where this accident happened. It will not be necessary to decide whether this was error or not, since the defendant waived the objection by introducing the conductor of the train which caused the accident, and proved by him precisely the same custom as that proven by appellee, and to which the objection was made.

The remaining complaint is that the verdict is excessive, but we cannot believe that counsel for appellant expect a reversal upon this ground. Decedent was a sober, industrious negro, about 70 years of age, and although his fingers were crippled from frostbite and he was somewhat enfeebled by his age, he was earning, at the time of his death, $2.00 a day, and we regard the verdict of $2,000.00 as damages for the negligent destruction of his earning capacity as moderate rather than excessive.

Wherefore, the judgment against the railroad company is reversed, but as against the Director General it is affirmed.