## Louisville & Nashville Railroad Company v. Wingo's Administratrix.

(Decided March 2, 1926.)

## Appeal from Kenton Circuit Court.

1. Master and Servant—Switching Crew of Railroad Leasing Terminal Facilities Held Employees of Lessee in Switching Operation. —Switching crew of railroad leasing terminal facilities to defendant were employees of defendant in switching and coupling diner, in absence of showing that, while serving defendant, they were under sole direction and control of lessor railroad.

2. Master and Servant—Switching Crew Required to Warn Car Inspector and Make Coupling with Ordinary Care.—Switching crew, in coupling a car to another car, owed duty to one inspecting such car to give warning of car's approach, and to make coupling with ordinary care.

3. Master and Servant—Risk of Master's Negligence Not Assumed, Unless Servant Knows of Failure of Duty and Consequent Danger. —Servant never assumes risk growing out of master's negligence unless he knows of failure of duty and consequent danger, or unless failure of duty and danger therefrom are so obvious that an ordinarily prudent person in his situation would have observed the one and appreciated the other.

4. Master and Servant—Car Inspector Might Assume Switching Crew would Make Coupling with Ordinary Care.—One inspecting sleeper might assume that switching crew, in approaching with another car, would perform their duty, and that coupling would be made with ordinary prudence and not in such violent manner as to move sleeper with brakes set.

5. Master and Servant—Movement of Sleeper, Struck by Switching Crew in Making Coupling, Held Proximate Cause of Car Inspector's Injuries.—Where switching crew, in coupling diner to sleeper, struck it with such violence so as to move it with brakes set, and car inspector was found with his head crushed at west end of sleeper, where he had gone to perform his duty, held that movement of sleeper was proximate cause of deceased's injuries.

6. Master and Servant—Question of Negligence and Proximate Cause of Injury to Car Inspector for Court, where Only One Reasonable Conclusion May be Drawn from Evidence.—Where only reasonable conclusion that might be drawn from evidence was that car inspector, while in performance of his duties, was killed by defendant's negligence, question of negligence and proximate cause was for court and not for jury.

7. Death—Time Children, Beneficiaries Under Federal Employers' Liability Act, May Expect Benefit from Father Not Limited to Infancy (U. S. Comp. Stats., Sections 8657-8665).—Time during which children, beneficiaries under federal Employers' Liability Act (U. S. Comp. Stats., sections 8657-8665), may reasonably ex-

pect pecuniary benefit from their father is a question for jury, to be determined in light of all facts and circumstances, and should not be limited by instruction to period of their infancy.

8. Death—Instruction on Measure of Damages to Surviving Widow and Children Under Federal Employers' Liability Act Held Improper (U. S. Comp. Stats., Sections 8657-8665).—Instruction that damages, in action under federal Employers' Liability Act (U. S. Comp. Stats., sections 8657-8665), for death, should be diminished by such amount as that, by using interest and part of principal sum each year, principal sum will have been exhausted at expiration of expectancy of life of decedent as affecting his wife, and not to exceed reaching of respective majorities of his children, held improper, as authorizing jury to diminish amount awarded by another sum.

9. Appeal and Error.—Defendant cannot complain of an instruction on measure of damages in his favor.

10. Death—Instruction Prescribing Formula for Finding Present Value of Pecuniary Benefits, which Beneficiaries, Under Federal Employers' Liability Act, Might Expect, Should Not be Given (U. S. Comp. Stats., Sections 8657-8665).—In action under federal Employers' Liability Act (U. S. Comp. Stats., sections 8657-8665), for death of decedent, instruction prescribing formula for finding present value of pecuniary benefits which each of beneficiaries had reasonable expectation of receiving from decedent, should not be given.

11. Death—$26,500.00 for Death of Car Inspector with Expectancy of 26 Years, Held Excessive.—Damages of $26,500.00 for death of car inspector, 42 years of age, who had an expectancy of 26 years, and whose wages were $5.60 per day, held excessive.

WOODWARD, WARFIELD & DAWSON, ASHBY M. WARREN and S. D. ROUSE for appellant.

O. M. ROGERS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an action against the Louisville & Nashville Railroad Company under the federal Employers' Liability Act to recover damages for the death of Dewitt Wingo. The jury awarded his widow $12,500.00, his infant children, William Thomas and Thelma Raines Wingo, $6,000.00 each, and his daughter, Deroda, another infant, $2,000.00. The company has appealed.

There is practically no dispute as to the salient facts. The Louisville & Nashville Railroad Company runs its passenger trains into the passenger station of the Pennsylvania Railroad Company at Pearl and Butler streets, Cincinnati. Wingo was employed by the Louisville & Nashville Railroad Company as a car in-

spector. It was his duty, as well as the duty of other inspectors, to see that the cars were in proper condition. Among the cars to be inspected were those constituting train No. 1, which was to leave Cincinnati for the south at 6:15 p. m. All the cars for that train were on track No. 6 with the exception of the sleeper, Regal, which was on what is called the ''short'' track, and about two or two and one-half feet from the bumping post. Inspection work was being performed by Sloan and Wingo. After inspecting the cars on track No. 6, Sloan suggested to 'Wingo that he go to the sleeper Regal, disconnect the steam hose and see if that car was in proper condition. To this Wingo assented and started towards the sleeper. In a very short time thereafter the switching crew approached with a dining car which they attached to the sleeper. No signal of its approach was given, and the coupling was made with such violence as to cause a loud report and move the sleeper with the brakes set against the bumping post. Immediately after the impact Wingo was found under the west end of the Pullman, with his head crushed, and in a dying condition.

On these facts the trial court directed a verdict in favor of Wingo's administratrix, and submitted to the jury only the question of damages.

The first question to be determined is whether the trial court properly sustained a demurrer to the second paragraph of the amended answer, which paragraph is as follows:

''Defendant for amendment to the second paragraph of its answer says that the place where plaintiff's intestate was injured was a passenger station with tracks and appurtenances located in Cincinnati, Hamilton county, Ohio, which at the time of said accident and injury to plaintiff's intestate was not the property of the defendant, but which it was permitted to use under and by virtue of a lease to it from the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company entered into on the 2 April, 1904, which lease was to continue for a period of sixty-four years from said date; that by the terms of said lease said railway company, lessor, granted to this defendant the right to use jointly with the lessor said passenger station, tracks, and appurtenances; that said lessor expressly agreed during said term to maintain the passenger buildings, tracks and appurtenances thereto in suitable condition for the

transaction of the passenger business of both par-- ties, to perform all switching service incident to the passenger traffic of lessor and defendant at said place and to operate the passenger station and provide all employees needed for the joint service; that upon the occasion of the injury to said Wingo said lease was in full force and effect between lessor and defendant; that defendant at said time was using said passenger station, tracks and appurtenances for its passenger service only; that upon said occasion the coach or dining car alleged to have been switched into, upon and against the said passenger coach and as a result of which it is alleged plaintiff's intestate suffered the injuries complained of was then and there switched or being switched or moved by said lessor, its agents and servants and by means of instrumentalities under the exclusive control of said lessor."

The answer does not set forth the terms and conditions under which the lessor was to furnish all employees for the joint service. Construed in connection with the petition it impliedly admits that the employees engaged in switching and coupling the diner were serving appellant only at the time of the injury. While it is alleged that the instrumentalities by which the diner was being moved were under the exclusive control of the lessor, there is no allegation that the members of the switching crew were subject to the sole control of the lessor, or that they were not subject to the direction of appellant. We need not discuss the various tests for determining when the relation of master and servant exists. Here, the switching crew sometimes served the Pennsylvania Company. At other times, as on the occasion in question, they served appellant. In a case of this kind the question of control is of paramount importance. In the absence of a showing that while serving appellant they were under the sole direction and control of the lessor, the members of the crew must be regarded for the time being as the employees of appellant. Atlantic Coast Line R. Co. v. Tredway, 120 Va. 735, 93 S. E. 560, 10 A. L. R. 1411; Floody v. Great Northern R. Co., 102 Minn. 81, 13 L. R. A. (N. S.) 1196, 112 N. W. 875, 1081. It follows that the court did not err in sustaining the demurrer to the second paragraph of the amended answer.

But the point is made that the members of the switching crew owed no duty to Wingo, and were there-

fore not negligent. In support of this position we are referred to the case of Aerkfetz v. Humphreys, 145 U. S. 418, 36 L. Ed. 758, holding that an employe engaged in repairing one of several tracks in the yards of a railroad company was not entitled to warning of the approach of a switch engine, but was guilty of contributory negligence in failing to discover its approach and keep out of its way. Whether, in view of the more humane attitude now prevailing towards employees who are busily engaged at work in railroad yards, the rule above announced would now be followed by the United States Supreme Court we need not inquire. It is sufficient to say that a track repairer and a car inspector stand on a different plane. The track repairer works in the open, and has an opportunity to observe approaching trains. On the other hand, the car inspector works in, under and about the cars. Upon his care depends the safety of all passengers and train employees. The human machine has its limits, and the situation is such that divided attention is not possible. He can not perform his duties as they should be performed and at the same time keep a lookout for approaching trains. On the other hand, it is comparatively an easy task for the switching crew to give warning of the approach of the engine or car, and to make couplings with ordinary care. Therefore, we are constrained to hold that, in railroad yards where numerous trains are being made up and inspected at all times of the day, the presence of inspectors on or about the cars may be anticipated at any time, and, that being true, it is the duty of the switching crew in coupling a car to another car to give warning of its approach and to make the coupling with ordinary care. Norfolk & Western R. Co. v. Short's Admr., 171 Ky. 647, 188 S. W. 786.

There is no ground for the insistence that Wingo assumed the risk. A servant never assumes risk growing out of the master's negligence unless he knows of the failure of duty and consequent danger, or unless the failure of duty and danger therefrom are so obvious that an ordinarily prudent person in his situation would have observed the one and appreciated the other. Louisville & N. R. Co. v. Davis, 199 Ky. 275, 250 S. W. 978; Chesapeake & Ohio Ry. Co. v. DeAtley; 241 U. S. 310, 60 Law ed. 1016, 36 S. Ct. 564. Wingo had the right to act on the assumption that the members of a crew in approaching with another car would perform their duty, and there is nothing in the evidence to justify the inference that

he knew of the diner's approach and voluntarily placed himself in a position of danger. Not only so, but if we could go further, and assume that he knew of the diner's approach, he had the right to act on the theory that the coupling would be made with ordinary prudence, and not in such a violent manner as to move the sleeper with the brakes set.

There is the further contention that appellant's and not appellee's motion for a peremptory should have been sustained, and that at most the question of negligence should have been submitted to the jury. The question of appellant's right to a peremptory has been disposed of in so far as it is based on the absence of negligence or assumption of risk. The only other ground relied on is that only a guessing case is presented in view of the fact that no one testified as to what Wingo was doing, or where he was, or how the accident occurred. This ground will be considered in the connection with the court's action in awarding appellee a peremptory. It is true that no one saw the accident, but all the circumstances point unerringly to the manner of its occurrence. In response to Sloan's suggestion, Wingo left for the purpose of going to the sleeper and releasing the air. The evidence is uncontradicted that immediately thereafter the diner approached without warning and struck the sleeper with such violence as to cause it to move with the brakes set for a distance of from two to two and one-half feet. In a very short time Wingo was found, with his head crushed, at the west end of the sleeper where he had gone to perform his duty. His injuries were of such a character that they must have resulted from the admitted movement of the sleeper. Louisville & N. R. Co. v. Payne's Admr., 177 Ky. 462, 197 S. W. 928. There is no evidence of contributory negligence. It follows that the case is one where the facts are undisputed, and the only reasonable conclusion that may be drawn therefrom by ordinarily fair and sensible men is that Wingo, while in the performance of his duties, was killed by the negligence of appellant. Therefore, the question of negligence and proximate cause was for the court and not for the jury, and the court did not err in directing the jury to find for appellee. Hines, Director General v. May, 191 Ky. 493, 230 S. W. 924.

Instruction No. 1 is complained of because it does not limit the expectation of pecuniary benefits on the part of the infant children of the deceased to the period of

their infancy. No such limit is prescribed by the federal statute, and we are not aware of any decision of the Supreme Court of the United States sustaining appellant's contention. Doubtless the time during which a child may reasonably expect pecuniary benefits from his father usually ends when he attains his majority, but not always so. It not infrequently happens that the father's income is not sufficient to meet the burden of a large family, and that many children go to work long before they are twenty-one, and not only support themselves, but contribute to the maintenance of the rest of the family, in which event the children may not have a reasonable expectation of receiving pecuniary benefits from their father even during their minority. On the other hand, the father may intend to send his child to college, or the child's health or lack of ability may be such as to require assistance from his father after he reaches a majority. Hence, it can not be said in every case that the child has no reasonable expectation of receiving pecuniary benefits from his father after he becomes twenty-one years of age. We are, therefore, of the opinion that the time during which children may reasonably expect pecuniary benefits from their father is a question for the jury, to be determined in the light of all the facts and circumstances, and should not be limited by instruction to the period of their infancy.

Instruction B is as follows:

"The court further instructs the jury that the amount so awarded by them should be diminished by such amount as that by using the interest and a part of the principal sum each year the principal sum will have been exhausted at the expiration of the expectancy of the life of the decedent as affecting Nora Wingo, and not to exceed the reaching of the respective majorities of the three children, Deroda Wingo, William Thomas Wingo and Thelma Raines Wingo."

Though the error is not one of which appellant may complain, this instruction is not proper, as it told the jury to diminish the amount so awarded by another sum. Not only for this reason, but for the additional reasons pointed out in Chesapeake & O. N. Ry. Co. v. Adams, 207 Ky. 668, 269 S. W. 1009, where the question was carefully considered, we deem it proper to add in view of another trial that neither instruction B nor any instruction

prescribing a formula for finding the present value of the pecuniary benefits which each of the beneficiaries had a reasonable expectation of receiving from the decedent should be given.

The size of the verdict presents a more serious question. As before stated the damages were fixed at $26,-500.00, of which sum $12,500.00 was apportioned to the widow, $6,000.00 to Thelma Raines Wingo, age 3, $6,-000.00 to William Thomas Wingo, age 5, and $2,000.00 to Deroda Wingo, age 17. Wingo at the time of his death was 42 years of age, and had an expectancy of 26 years. His wages were $5.60 a day. On the basis of six working days in a week, he received $1,747.20. On the other hand, if he worked every day in the year, he received $2,044.00. Allowing him as the head of the family a reasonable amount for his own support, it is apparent that whether we adopt the one figure or the other the interest at the usual and ordinary rate on the amount awarded each of the beneficiaries is only slightly less than, if not equal to, the actual pecuniary benefits which such beneficiary would have received had the decedent continued to live. The result is that the beneficiaries will not only enjoy all the benefits that they would have received from the decedent had he continued to live, but at the end of their expectancy will have on hand a sum almost, if not quite, equal to the aggregate benefits they would have received. In view of these circumstances we are constrained to the opinion that the verdict is excessive.

Judgment reversed and cause remanded for a new trial consistent with this opinion.

Whole court sitting.