## Patrick's Adm'x v. Louisville & N. R. Co.

June 20, 1939.

Stephens & Steely, E. L. Stephens and Beckham Overstreet for appellant.

Woodward, Dawson & Hobson and R. P. Hobson for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellant, Mahala Patrick, administratrix of the estate of her deceased husband, Henry N. Patrick, is appealing from a judgment on a verdict where the jury was peremptorily instructed to find for the appellee, Louisville & Nashville Railroad Company. The sole ground urged for reversal is that the trial judge erred in giving the peremptory instruction in favor of the appellee.

Patrick was 63 years of age at the time of his death,

January 2, 1937. He was employed by the appellee as a lumber checker, and he was in charge of its lumber yard in South Louisville. He was earning $127 per month. The accident in which Patrick met his death occurred shortly before one o'clock in the afternoon. He was knocked or thrown from a gondola type freight car and was run over by the car. He died immediately thereafter.

Three cars were standing on what is known as the grain door track in the lumber yard. The southermost car, a box car, was being unloaded by a crew of workmen under the direction of Patrick. The middle car was the gondola in which Patrick was checking lumber. This car appears to have been only partially filled. The end of it, toward the north, was down. It was from this end that Patrick was thrown. There is conflicting evidence as to the type of the next car, the one to the north. Some of the witnesses said it was a box car; one said that it was a gondola; and others said it was a flat car loaded with lumber.

Shortly after the men returned to work at 12:40 p. m. George Staples, an employee of the Railroad Company, came to the place where these three cars were located, and told the workmen who were unloading the box car to take down their skids because the cars were going to be moved. He testified that: "I says, Uncle Pat (Patrick), we are going to push you out. He says, 'All right, let her bump,' or something like that." Staples then signaled for Pike, who was driving one of the tractors with which the cars were pushed from place to place, to move the cars. Lyle, another tractor driver, helped start the cars. They were pushed on some 200 to 250 feet to the south by Pike, where they were left for 10 or 15 minutes.

Patrick apparently stayed on the gondola and continued his work of checking while the cars were being moved southward and also while they were standing in their new location. Both Pike and Lyle testified that they did not see him on the middle car. Another car was moved by Pike before he and Lyle started to move the three cars north toward the position where they had stood originally. There is little conflict in the testimony on the point that Patrick's duties required him to perform work both on the ground and on cars. The Railroad Company vigorously contends, however, that he

violated Rule 10 of its Safety Rules by staying on the car while it was being moved. This rule is as follows: "Riding on locomotives, cabooses, freight cars and electric or locomotive cranes, is forbidden except in direct line of duty."

The Company contends also that Patrick should have got off the car when he was told that it was to be moved, and stayed off of it until it was moved back to the place where it was standing originally.

For reasons which will be discussed hereinafter, we do not think that it is necessary for us to determine whether Safety Rule 10 is applicable to the case at bar. The movement of the cars in the case before us was confined to appellee's lumber yard. Engines were not used in their movement. They were pushed about from place to place by tractors. There were no couplings on the tractors, and apparently no effort was made to brake the cars. It is to be noted that Staples did not tell Patrick to get down off the car. Instead he merely said, "We are going to push you out." Patrick's answer to the effect, "Let her bump," and the fact that he remained on the car is some indication that this was not an unusual occurrence. As to the end being down on the northern end of the car on which Patrick was standing, Pike said on cross examination:

"That car had been set in there to load stuff in the yard. They just—it was just a temporary job. They loaded the stuff in the yard, and pushed it around there to be unloaded at the mill, and just did not take any precaution about it."

Pike testified that he could not get behind the box car to help move it northward because of the piles of lumber which stood some 10 or 12 feet high on each side of the track, and that he pushed the two cars which were north of the box car for 25 or 30 feet and waited for Lyle to bring up the box car. He then got around behind the car and moved to the southeastern corner of it. Then both he and Lyle ran their tractors into the box car, and it went forward and hit the gondola, thereby moving it and the other car some six or eight feet. It was the striking of the car on which Patrick was standing by the box car that caused him to fall to the track.

Two colored men witnessed the accident. They were standing on top of a pile of lumber nearby. Both testi-

184

fied that Patrick was in the act of getting off the car when the box car hit the gondola. They said that he fell to the floor of the car and rolled off the northern end of it and was then run over.

Lyle testified that his tractor was equipped with both a horn and a bell, but that neither one of them was working at that time. He testified that no signal was given when the tractors bumped into the box car. Pike testified that he had a bell on his tractor but that no signal was given. One witness, who was standing on a pile of lumber and who witnessed the accident, testified that he thought he heard a signal. Lyle testified that it was customary to give a signal when cars were moved. In commenting upon his reasons for giving a peremptory instruction in favor of the appellee the trial judge said that Patrick was notified that the cars were going to be moved, and that no notice was required to be given him of a thing he already knew.

Several witnesses testified that they knew that the cars were going to be moved back to the place where they had first stood, and it is quite probable that Patrick knew this as well. We are not disposed, however, to follow the trial judge in the view that Patrick should be charged with contributory negligence when he failed to get off the car when he was first notified that it was to be moved. Granting that he should have got off the car, which, as we have indicated, we are not so holding, he had a right to get back on it at the new location. The question as to whether or not notice was given Patrick that the cars were going to be moved back in a northerly direction should have been submitted to the jury. See Chesapeake & Ohio Railroad Company v. Plummer, 143 Ky. 97, 136 S. W. 159; Louisville & Nashville Railroad Company v. Payne's Adm'r, 177 Ky. 462, 197 S. W. 928, L. R. A. 1918C, 376; Louisville and Nashville Railroad Company v. Kerrick, 178 Ky. 486, 199 S. W. 44; Louisville & N. R. Co. v. Wilson, 205 Ky. 533, 266 S. W. 13; Louisville & N. R. Co. v. Wingo's Adm'x, 213 Ky. 336, 281 S. W. 170.

The trial court also gave as a reason for the granting of the peremptory instruction that Patrick assumed the risk incident to the type of work he was doing; but to this view we can not subscribe. Louisville & N. R. Co. v. Wingo's Adm'x, supra; Louisville & N. R. Co. v. Wilson, supra; Big Sandy & Cumberland R. Co. v.

Measell's Adm'r, 240 Ky. 571, 42 S. W. (2d) 747. As indicated, it is our view that there was ample evidence to warrant the submission of the case to the jury under appropriate instructions.

The appellee insists that the judgment of the trial court should not be disturbed because (1) the petition did not state a cause of action. (2) the appellee was guilty of no negligence, and (3) Patrick assumed the risk. We think the petition did state a cause of action, and, as indicated, we can not agree with the other two points made by the appellee. Under the circumstances peculiar to this case it was not necessary for the appellant to allege that the movement of the cars was unusual and unnecessary.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.