## Louisville & N. R. Co. v. Houck.

Feb. 14, 1941.

645

H. T. Lively, J. Miller White, Vincent J. Hargadon, Victor L. Kelley and J. R. Layman for appellant.

W. R. Gentry and Ernest N. Fulton for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

While measuring the height of the floor of an empty freight car which had been temporarily placed by a train crew of appellant on a side track adjacent to the plant

of the T. W. Samuels Distillery Company at Deatsville, Kentucky, during switching operations in the forenoon of April 19, 1937, the appellee was injured as the result of the car being suddenly set in motion by contact with a partially loaded freight car, which, a few minutes before, had been moved from the siding and was being switched or shunted back. When the train carrying the empty car arrived at Deatsville, the appellee and other employees of the Distillery working under his direction were engaged in loading from a loading platform the partially loaded car referred to, the temporary removal of which was necessary in order to place on the siding for future loading the empty car which appellee was measuring at the time the partially loaded car was returned. Upon the arrival of the train, appellee and his crew, as was customary, discontinued loading operations, and appellee went into the boiler room of the Distillery to get a drink of water. He testified that upon his return he saw that the engine which had removed the partially loaded car had passed over the switch on to the main track, and that the switch had been closed. Thinking that he would have time to take the measurements of the "empty" before the partially loaded car was returned, he went behind it and began the performance of his task, although from that position he could neither see nor be seen by the engine crew. He knew that it would be necessary for the switching crew to return the partially loaded car to the place it had previously occupied on the siding, and that in order to do so it would be necessary to move the "empty" which he was engaged in measuring. However, he anticipated that the engine would return to the switch with the partially loaded car, but claims that his failure to observe or hear the approach of the partially loaded car was occasioned by the fact that instead of the engine returning to the switch, it remained on the main track and "poled" the partially loaded car on to the switch. He admits that he did not see a pole used but afterwards saw the crew replace the pole in the tender. He was not corroborated in his statement that he was struck by the empty car which he was measuring, or as the use of the pole by the engine or train crew, and the judgment awarded him in the Circuit Court, from which this appeal is prosecuted, was necessarily predicated upon his own testimony, which we have assumed to be true and from which we quote the following:

"A. * * * I was watching for the car to go on down. They put the car that was loaded on down by the cattle road, and I saw the engine when it went on over the switch track, and I saw one of the trainmen close the switch and I watched until half of it had passed over the switch, and I walked thirty feet from where I was standing over to this empty car. I went to the back end to measure the car, and that door was closed on that side, and I went to the other end to measure it.

"Q. What were you going to measure it for? A. We were going to build a platform to put in there to unload whisky barrels, and I was to measure the car for it.

"Q. Who told you to do that? A. Mr. Despain, the assistant General Manager.

"Q. Tell what happened. A. I put my rule down and measured it and was going to read the figures on the rule, another car was pushed or poled against the car I was measuring, and knocked me back about fifteen feet. When I looked up I saw them putting the pole back, and there was only one time when I saw that pole used before that was when a car jumped the track down by the cattle yard."

And again:

"A. Yes, sir, the engine and two gondolas were on the main track and I watched the first gondola half over the switch and saw the trainmen close the switch, and then I come on back here and stopped and thought I would measure before they switched the cars back in where they belonged."

Notwithstanding appellee's knowledge of the anticipated movement of the car which he was measuring, and the fact that he could neither see nor be seen by the engine crew after placing himself in a position of peril, we are not prepared to say that he was guilty of contributory negligence as a matter of law, if, as he testified, the appellant, in placing cars on the siding on all previous occasions, had employed methods which involved engine or train movements which, of themselves, afforded notice of the operation, and he had no reason to anticipate that such methods would be departed from.

But we have searched the record in vain for any evidence indicating that appellant's employees knew or could have known by the exercise of ordinary care that appellee had placed himself in a position where he would be injured by the movement of the temporarily placed "empty" or any evidence that they had any reason to anticipate that he would attempt to perform any work in or about any car on the siding prior to the completion of the switching operations. He himself testified that "whenever the train come in we (Distillery employees) quit work until they got through switching, and then we would go back to work." It is conclusively established by the testimony that the train crew was cognizant of this fact. Admittedly the switching operations had not been completed when appellee received the injuries which resulted from the movement of the car, which, in turn, was a necessary part of these operations. In short, the record before us leaves no doubt that while appellee knew that the car behind which he was working would be moved before the switching operations could be completed, the train crew had no reason to anticipate his presence there, and could not have discovered it by the exercise of ordinary care.

Appellee's counsel rely upon the cases of Payne, Agent, v. Wallace's Adm'r, 197 Ky. 551, 247 S. W. 705; Payne, Agent, v. Raymond's Adm'r, 198 Ky. 74, 248 S. W. 224; Patrick's Adm'rx v. Louisville & Nashville Railroad Co., 280 Ky. 181, 132 S. W. (2d) 758, and other cases as supporting the doctrine that where a car is placed on a railroad track for the purpose of being loaded, unloaded, or repaired, the Railroad Company is under a duty to anticipate the presence of persons on or about the car for that purpose and to take proper precautions for their safety, not only by giving reasonable warning of any intended movement of the car, but by exercising ordinary care in the movement of the car itself. The difficulty with appellee's case is that the rule, though sound, has no application to the facts presented. The reason for the rule, of course, is that presumably, a car placed on a track for the purpose of being loaded, unloaded, or repaired, will be loaded, unloaded, or repaired, thus necessitating the presence of persons on or about it. But, as said in the case of Payne, Agent, v. Wallace's Adm'r, supra [197 Ky. 551, 247 S. W. 706], "Whether or not the company is under the duty to an-

ticipate the presence of other persons on or about the car depends on whether the facts are sufficient to charge it with notice.''

In the case before us, the car which appellee was measuring when he was injured, not only had not been placed for the purpose of being loaded, unloaded, or repaired, but, within the knowledge of all the parties, including the appellee, had been placed temporarily in a position from which, within a very short period of time, it would be necessary to move it in order that the partially loaded car might be returned to the loading platform; and there was no evidence whatsoever indicating that any employee of the Distillery Company had previously attempted to measure or perform any other character of work on or about any car so temporarily placed. Cincinnati, N. O. & T. P. Ry. Co. v. Helm, 149 Ky. 340, 148 S. W. 25.

From what has been said, it is apparent that there was no basis for the instruction of the Trial Court predicating appellant's liability upon the knowledge of its servants of the ''custom of the employees of said T. W. Samuels Distillery Company, including plaintiff, to work on or about the cars placed on said switch by said defendant in loading or unloading said cars or other work for said T. W. Samuels Distillery.'' In fact, the only instruction proper to be given on the evidence presented was a peremptory instruction to find for the defendant.

If on another trial, however, there is any evidence introduced showing that it was the custom of employees of the Distillery Company to measure or do other work in or about cars temporarily placed on the siding in the course of switching operations, and before the switching operations were completed, and that the appellant's employees knew or could have known of such custom by the exercise of ordinary care, the Court will submit to the jury the questions thus raised, and make the duty of the trainmen to anticipate the presence of appellee behind the car which he was measuring and to use ordinary care in the movement of the car depend on an affirmative answer. Payne, Agent, v. Wallace's Adm'r, supra.

If the case should be re-tried, the Court will not permit nonexpert witnesses to testify as to the nature of the internal conditions resulting from appellee's inju-

650

ries, or that he was in good or bad health prior or subsequent thereto. Chicago, St. L. & N. O. R. Co. v. Rowell, 151 Ky. 313, 151 S. W. 950; New York Life Ins. Co. v. McCane, 276 Ky. 712, 124 S. W. (2d) 1057.

Judgment reversed for proceedings consistent with this opinion.