## Chesapeake & Ohio Northern Railway Company, et al. v. Adams, Administratrix.

(Decided March 6, 1925.)

### Appeal from Greenup Circuit Court.

1. Master and Servant—Verdict for Death of Brakeman Held Not Against Evidence.—In action for death of brakeman when fill gave away, causing engine to overturn, verdict for plaintiff held not flagrantly against evidence.

2. Trial—Refusal of Instruction Covered by Given Instruction Held Not Erroneous.—In action for death of brakeman when engine on which he was riding overturned, refusal of requested instruction that, if derailment was not caused by giving away of fill supporting track at place of accident, then law was for defendant and jury should so find, was not erroneous, where given instructions fully covered theory embodied in requested instruction.

3. Death—Refusal of Instruction on Present Cash Value of Life Held Not Erroneous.—In action for death, refusal of instruction furnishing jury a guide to determine present cash value of decedent's life was not erroneous, where it told them only what as men of common sense they knew already, that a present cash value of a future fixed sum is a discounted value.

4. Evidence—Common Knowledge that Money Borrowed is Returned with Interest Added, and that Fixed Sum Due in Future, if Presently Paid, Must be Discounted.—It is a matter of common knowledge that money borrowed or invested is returned with in-

terest added, and that a fixed sum due in future, if presently paid, must be discounted by interest which may be earned in meantime.

5.   Trial—Jury Trials Must be Conducted Along Practical Lines.— Jury trials must in nature of things be conducted along practical lines.

WORTHINGTON, BROWNING & REED and PRICHARD & MALIN for appellants.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

During the years 1915-1917, the appellant, Chesapeake and Ohio Northern Railway Company, built a line of railroad from Limeville, Kentucky, to Glen Jean, Ohio, crossing the Ohio river at Sciottoville. About two miles north of the river, a large fill known as the "Clarke fill" was constructed when the railroad was built.   This fill is approximately three thousand feet in length, the maximum height being from fifty to sixty feet.   At each end of the fill the railroad passes through a rock cut.  Operation of trains over this line of track was begun in the fall of 1917, and has continued down to the present time; the road being operated by the appellant, C. & O. Ry. Co. About half-past six on the morning of January 11, 1922, a heavy freight train running from Russell, Kentucky, to Columbus, Ohio, passed over this fill.   At about its middle, a large part of the fill gave away, carrying with it the engine and a number of cars.   Appellee's decedent, who was the head brakeman on this train and riding on the engine at the time it turned over, was scalded to such an extent that in a few hours thereafter he died.  Appellee, as his administratrix, brought suit against appellants for the death of her husband, and recovered damages for the benefit of herself and their infant children in the sum of $14,800.00.

Appellants present three grounds for reversal of this judgment, the first being that the verdict is flagrantly against the evidence, and the second and third being that the court erred in declining to give certain instructions offered by them.

Appellants in their brief say: "We concede that under the scintilla rule, the French testimony was sufficient to require the submission of the case to the jury,

but we earnestly submit that the verdict is'' flagrantly against the evidence.

The fill in question was constructed, first, by dumping into the ravine, over which it passes, the rock which came out of two cuts at either end thereof, and through which the railroad runs. This rock was not sufficient to more than half make the fill and it became necessary to construct the remaining part with dirt taken from a borrow pit. Just what was the character of this dirt is in dispute. Appellee's testimony is to the effect that it was gumbo, or a clay which has no holding qualities. Appellants' testimony is that it was good red clay, of a kind and character universally used in making fills. That it was able to support the traffic of trains for five years, of course, stands admitted. But there is much evidence in addition to the testimony of appellee's witness, French, which indicates that the dirt which went into this fill was of a very soft and spongy nature and that it would not stand up under freezings and thawings or wet weather. The engine itself after the derailment was buried half way into the mud of the fill. It is admitted that four freight cars and fourteen pair of trucks sunk so deep in the mud that they were never gotten out. The witness Brown says that the dirt of the fill was soft and that later when piles were driven into it by the railroad to hold this embankment in place, they went in very easily; that the mud which slid into the mouth of the culvert at the base of the fill was so soft that dynamite had no effect upon it. The witness Bingham also testifies as to the slick and spongy nature of the dirt. Other witnesses, among whom was the engineer Perry, had noticed small cracks in this fill on numerous occasions. The witness Williams, who lived in the neighborhood, testified that whenever it rained on this fill the yellow mud would slip and come down; that he had noticed this condition all winter, and that whenever a train passed across this fill it would shake. To the same effect is the testimony of the witness Stockham. The witness Schusky, who was a newspaper reporter and went to the scene of the accident to get the details of the same for his paper, said that the character of material in this fill was ''soft loam or kind of material that would slide or give way under prevailing weather conditions. I mean by that, freezing and thawing.'' Of course, the appellants produced a mass of testimony to substantiate their contention that this fill was properly constructed and maintained. Maybe the

numercial weight of the witnesses is with them, but in the light of what we have set out, we cannot say that the verdict is so flagrantly against the evidence that a new trial should be ordered on this ground. Especially is this so where the railroads offered no explanation of why the fill gave way. See L. & N. R. R. Co. v. Allen's Admr., 174 Ky. 736, 192 S. W. 863.

The second error urged is that the court declined to give to the jury this instruction:

"The jury are instructed that if they shall believe from the evidence that the derailment of said train was not caused by a giving away of the fill supporting the track at the place of the accident, but was the result of some other cause, then the law is for the defendant, and the jury will so find."

Instruction number one, given by the court, when taken in connection with instructions numbers 2, 5 and 6, so given, fully covered the theory of the case embodied in the offered instruction.

The last error urged is the failure of the trial court to properly instruct on the measure of damages. No criticism is offered to the instruction given on this phase of the case as far as it went, but it is said that in telling the jury if they found for appellee, they should find such a sum as would fairly and reasonably represent the present cash value of the aggregate future pecuniary benefits appellee and their children ought reasonably expect to receive from their decedent, no criterion was given to the jury whereby to determine that present cash value. In this connection, appellants offered the following instruction, which the court declined to give:

"The term 'present cash value' as used in the foregoing instruction number 7 means such sum as will produce annually for the widow and children during the period of their dependency, an amount equal to what they could have reasonably expected from the decedent had he lived, the principal sum so provided for the beneficiaries to be exhausted by such annual payments. Under this instruction, the limit of recovery is such sum as being put at interest, will each year, by taking a part of the principal and adding it to the interest, yield an amount equal to that which might reasonably be expected would have been received from the decedent had he lived."

Counsel have cited a number of cases from other jurisdictions where the courts have approved the giving of an instruction somewhat in the form offered by appellants, but they have cited no case where this or the United State Supreme Court has said it was error not to give such an instruction. This matter must be looked at from a practical standpoint. As well said in the opinion of this court in the case of C. N. O. & T. P. R. Co. v. Jones' Admr., 177 Ky. 485, 197 S. W. 932:

"It is true that this instruction (like the one here criticised) did not give the jury any criterion by which they should estimate the present cash value of the sum to be awarded as damages, nor do we know that it was necessary that they should have been specifically instructed upon this point. In fact, it would be rather difficult to draft an instruction furnishing a formula as to the present cash value that would be helpful to the jury or assist them to fix the damages according to this measure with any sort of accuracy. When juries of plain men in cases like this come to determine the amount of damages that should be awarded, they cannot well be intelligently guided by scientific or mathematical rules. In the very necessity of things they must take a general survey of the case and determine from all the facts and circumstances before them what would be reasonable and fair compensation to the dependents for the pecuniary loss sustained by him, and when they are given a general direction to fix the damages at such a sum as would be equivalent to the present cash value of the loss sustained, and are assisted by such competent evidence as the parties may offer, they must be trusted to ascertain in their own way what the present cash value of the loss would be."

This language was approved in the case of Ohio Valley Electric Ry. Co. v. Brumfield's Admr., 180 Ky. 743, 203 S. W. 541. The Supreme Court recognized this difficulty when in the case of C. & O. R. Co. v. Kelly, 241 U. S. 485, it said:

"We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by admitting the testimony

of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest and for various periods covering the ordinary expectancies of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum."

In L. & N. R. R. Co. v. Holloway, 246 U. S. 525, the Supreme Court held that the railroad company had a right to require a general instruction of "pecuniary benefits reasonably to be expected" to be supplemented by another to the effect that these benefits must be considered at their present value, but it also condemned an offered instruction which fixed that "present value" at a sum which would at six per cent yield during the period of the proven expectancy of life the aggregate proven pecuniary benefits reasonably to be expected. It is true the offered instruction in this case avoids both elements condemned in the Holloway case of the fixed rate of interest and the proven expectancy, but we think that in thereby avoiding Scylla it falls into Charybdis. As offered, the instruction was exceedingly vague and of very little help to the jury. About all that it told the jury was that a present cash value is simply a discounted value. As men of common sense, the jury knew this already. There is probably nothing that more often touches the affairs of mankind than the principle of interest. Few men have not at some time or other in their lives been compelled to borrow either to finance the purchase of a home, or farm, or the conduct of their business, and even of their households. It is a matter of common knowledge that money borrowed or money invested is returned with interest added and that a fixed sum of money due in the future, if presently paid, must be discounted by the interest which may be earned in the meantime. As the Holloway case holds that the jury cannot be tied down in estimating the present cash value by any fixed rate of interest or any specific period of time, it would seem that about all that could possibly be done in this connection that would at all be helpful would be to submit a mathematical formula to the jury whereby, after determining the rate of interest to be applied and the period of expectancy to be enjoyed, they could work out the discounted value. That this cannot be done prac-

tically is clear.  Such a mathematical formula is not easy of application and when accurately applied involves the knowledge of more mathematics than can always be found in an ordinary collection of laymen.  Jury trials must in the nature of things be conducted along practical lines, and we believe the better rule to be for the parties, if they so desire, to introduce evidence to show what, under the varying conditions of the evidence, the present value of the expected pecuniary benefits may be, and then leave it to the jury to determine from this evidence what such present value is.  In the absence of such evidence, the jury, knowing as men of common sense that a present value of a future fixed sum is a discounted value, must be trusted, as they are trusted in many other respects, to ascertain in their own way what this discounted value is.  As the offered instruction would not have helped the jury to decide this issue, and as it told them only what as men of common sense they knew already, it was not error to refuse to give it.

As appellants complain of no other errors, the judgment of the lower court is affirmed.

Judgment affirmed.