ELMER JACOBSEN, APPELLEE, V. VIVIAN POLAND, APPELLANT.

80 N. W. 2d 891

Filed January 25, 1957.   No. 34049.

*John E. Dougherty* and *Thomas W. Lanigan,* for appellant.

*Miles N. Lee* and *Tedd C. Huston,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee demands damages from appellant on account of injuries he suffered because of a collision of an automobile operated by appellant and an automobile in which appellee was a guest as a result, as appellee alleges, of the negligence of appellant.

The substance of the cause of action of appellee is that on November 8, 1953, he was riding as a guest in an automobile traveling in a lawful manner towards the south on a public highway at the crest of a hill about 2½ miles south of Gates Store in Custer County; that appellant was operating his automobile towards the north on the highway at that time and place in a negligent manner on the left or west side of the center of the highway directly towards the automobile in which appellee was traveling in its proper right or west lane of travel; that the driver of the automobile in which appellee was riding as he came to the crest of the hill obtained a view of the automobile of appellant when it was a short distance from and was moving directly towards the car in which appellee was riding and the driver thereof in an effort to avoid a collision turned the automobile sharply and abruptly to the left on the east part of the highway and appellant drove his automobile toward the east side of the road and thereby

caused a head-on collision between the automobiles; that the negligence of appellant which proximately caused injuries to appellee was that he operated his automobile on the wrong side of the highway, that he failed to have a proper lookout for other vehicles traveling on the highway, and that he failed to have reasonable control of his automobile preceding and at the time of the collision; and that serious injuries were inflicted on appellee as a consequence whereof he is permanently and totally disabled.

Appellant denies the version of the accident alleged by appellee except appellant admits the collision at the time and place as stated and pleads that the collision of the automobiles was caused by the driver of the one in which appellee was riding operating it at a speed of 65 to 70 miles per hour on the east side of the highway directly in front of and against the automobile of appellant as he was lawfully proceeding toward the north up the hill to its crest; and that any injuries suffered or damages sustained by appellee as a result of the collision were caused by the negligence of the driver of the automobile in which appellee was riding which cooperated and concurred with negligent acts and omissions of appellee which were more than slight. Appellant specified numerous acts of negligence of the driver of the car in which appellee was riding and many separate acts of negligence of appellee. They are not further mentioned because they were resolved by the jury adversely to appellant and consequently they are unimportant if the verdict is a legal one.

Appellee traversed the affirmative statements made in the pleading of appellant.

Appellee prevailed in the district court. The judgment in his favor and the denial of the motion for a new trial are the occasion of and the subject of this appeal.

Appellee was on November 8, 1953, traveling from Gates Store where he lived in Custer County with the intention of going to Broken Bow to attend the wedding

of his son. He was a guest in an automobile owned and operated by his son-in-law, Richard Embree, which will be designated the Embree car. Appellee occupied the left side of the rear seat. His wife was to his right, a granddaughter to her right, and a son of appellee was also in the rear part of the car. The driver of the automobile and his wife occupied the front seat. They started from Gates Store about 1 o'clock p. m. and proceeded south on a graveled highway. The part of the road that was surfaced was about 24 feet wide. It was affected by melting snow and its condition varied from dry to wet and muddy. There was quite a large hill, the crest or summit of which was about 2½ miles south of the Gates Store. It was identified as Myers Hill. It was about ⅛ of a mile from the bottom of it to the top on both the north and on the south. The road was quite badly eroded at the north bottom of the hill where water had collected and a considerable mudhole had resulted. The area of the mudhole was irregular, bumpy, and had ruts through it. The speed of the car was reduced and the car was put in second or intermediate gear. The speed of the car through the mudhole was 15 to 20 miles per hour. The highway on the north side of the hill was wet and muddy because of melting snow. The automobile was continued in second or intermediate gear while it proceeded up the north side of the hill until it was near the summit and immediately before the automobile of appellant came into view of the driver of the Embree car and its occupants. The Embree car as it proceeded up the hill and until immediately before the accident, the subject of this case, was operated on the west or right-hand portion of the highway with the west side of the car 3 or 4 feet from the west edge of the shoulder.

When the Embree car approached the summit of the hill its driver, Richard Embree, saw an automobile traveling directly towards him on the west side of the highway a distance to the south of 100 to 150 feet at a

speed of 35 miles per hour. It was a Chrysler car operated by appellant. It was proceeding north with its west side within 3 or 4 feet of the west shoulder of the highway. The speed of the Embree car was then about the same as the speed of the Chrysler car. The first thing Embree saw as his automobile was coming up to the crest of the hill was the ornament on the front of the hood of the Chrysler car driven by appellant. The space between the two automobiles was rapidly closing. Embree immediately turned his car to the right when he realized there was a drop of 3 or 4 feet to his right, there was a ditch there, a lot of snow to his right, and several feet west of that was a bank where the grader had cut through the hill. The automobile of appellant had not changed its course or decreased its speed. Embree then realized he could not escape to the right and he suddenly turned to the left in an attempt to avoid a collision of the automobiles. The only open and unoccupied part of the highway was to the east. At the precise time Embree moved his car towards the east the appellant turned and operated his car to his right or to the east and drove it into and against the Embree car about the middle or slightly east of the middle of the highway. The time between when the automobile of appellant came into view of Embree and when it collided with the Embree car was only 2 or 3 seconds. The Embree car was far enough to the east that if the automobile of appellant had continued directly north there would have been no contact of the vehicles.

The Chrysler automobile struck the Embree car with great force. The front of it was greatly damaged. The doors on the left side were forced open, and the steering assembly was broken and shoved against the windshield. The occupants were thrown against and about the car and all of them were injured, some more seriously than others. The wife of Embree was forced against and through the windshield. The appellee was partly in and partly out of the car and he sustained a

severely comminuted fracture through the intertrochanteric and subtrochanteric region of the left femur over a distance of approximately 8 inches, a transverse comminuted fracture of the junction of the middle and upper thirds of the left tibia, and a fracture of the fibula at about the same level.

The Embree car was moving southward at the time of the collision. It was several feet from the east side of the highway when it came to rest. The skid marks in the road behind the car extended to the west side of it and indicated that the car had moved from the northwest. The rear right wheel of the car was about a foot or a foot and a half from the center of the highway. The automobile of appellant stopped with its rear wheels to the west of the center of the highway and its front to the northeast. The extreme rear of the car was not far from the west edge of the road. It was equipped with deep-tread or mud tires. The tracks of the tires were visible for a considerable distance down the hill to the south. They were on the west side of the highway with the west one 3 or 4 feet from the west shoulder. There were 3 or 4 feet of tire tracks directly in front of the front wheels of the Chrysler car indicating that it had been forced back by its impact with the Embree car. The damage to the automobile of appellant was largely to the left front. The entire front of the Embree car was damaged. The highway on the south side of the hill was in much better condition than on the north side and the east half of the road on the south side was substantially dry and in some better condition than the west side of the road at that place. There was no condition of the road up the south side of the hill that made it impracticable for any traveler on the road to observe the requirements of the law of the road. There was no other traffic at or near the site of the collision other than the automobiles of Embree and the appellant.

The evidence produced by appellant was that the day

of the accident he was driving his automobile north up the Myers Hill on the right or east side of the highway; that the east side of his car was about 2 or 2½ feet west of the east edge of the road; that he did not at any time that day have or operate his automobile west of the center of the road at that location; that when he came to the top of the hill the Embree car came from the north on the east side of the road traveling at a speed of about 70 to 75 miles per hour; that it struck the automobile of appellant and forced it back towards the southwest about 15 to 20 feet; that when his car came to rest after the collision it was standing astride the center line of the road; that the Embree car was in about the center of the east lane of the highway; and that appellant had many conversations with appellee and his wife after November 8, 1953, until this litigation was commenced about the collision of the cars and what had happened as a result of it and neither appellee nor his wife had ever made any claim that appellant was responsible for the accident and the injuries caused appellee.

The evidence is obviously in conflict as to the manner and cause of the collision of the automobiles which resulted in the injuries to appellee. It presents a case that was required to be determined by the jury. There is no assignment or argument on this appeal that the evidence is not sufficient to sustain the verdict of the jury. It is for the jury to determine controverted issues of fact in a law action if the evidence is in dispute. Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496; Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683. The fact that appellee was successful in the trial court makes it necessary for this court to consider the evidence and reasonable inferences from it most favorably to him. In the absence of any prejudicial error of law in the case the verdict of the jury is conclusive of all issues of fact in favor of appellee.

There was proof produced by appellee that he en-

gaged in the welding business as a welder in the year 1925 and he continued to work as a welder until and through the year 1950. He worked in four or five states for gas companies and the United States. He was employed at the Navy Yard at Bremerton, Washington, from 1942 to 1945. His last engagement as a welder was at Broken Bow. It was concluded with the year 1950. He earned during that year as a welder in excess of $5,000 and his average yearly earnings for several years prior thereto were approximately the same as they were in 1950.

Appellant, by process of the court, secured a copy of the income tax return of appellee for each of the years 1952, 1953, and 1954. These were offered in evidence by appellant and, in opposition to objections by appellee, were admitted in evidence and submitted to the jury for examination. Appellant during the cross-examination inquired of appellee concerning his income tax returns when he was working for the government at Bremerton, Washington. He said he did not himself make them. Appellant then asked appellee, "But you do know how much your income was at that time, don't you?" He answered that he did, approximately. Appellee on redirect established that his earnings as a welder at the Bremerton Navy Yard for the year 1943 were $3,755.16 and for the year 1944 were $3,615.84. Appellant elicited by recross-examination that appellee while working at the Navy installation for the years 1942 to 1945 had a civil service status and his compensation was substantially constant. He did not receive "time-and-a-half or double time." He expressed this by saying, "We were frozen on the job."

Appellee during the year 1951 constructed a building at the place referred to as Gates Store and commencing in 1952 conducted a store at that location known as the Gates Trading Post until he was injured in the collision described herein. He operated it with the as-

sistance of his wife. He did not realize from the store venture substantial net profit.

He was not in any way or degree disabled before the collision of the automobiles but, on the contrary, was capable of doing and did do all things necessary to his work and activities until he was injured in and totally and permanently disabled by the accident. He was 49 years of age at that time. There was proof that the reasonable compensation for a welder who was working by the job and not as an employee for another in that community was $3 to $5 per hour and that the fair and reasonable compensation of a welder employed by another welder in that community as $2 per hour or $96 per week.

Appellant contests the legality of the action of the district court in admitting, over objections of incompetency and remoteness, evidence concerning the engagements and earnings of appellee prior to 1951 as a welder and evidence of the reasonable compensation of a welder in the community in Nebraska where appellee was resident and had carried on his trade as a welder. The essence of the argument of appellant in this respect is that the evidence of the earning capacity of appellee should have been restricted to his activities as a rural storekeeper during the period of less than 3 years from the time he discontinued work as a welder with the commencement of the year 1951 until he sustained injuries on November 8, 1953, resulting in his total and permanent disability.

The authorities are not unanimous concerning the contentions made by the parties on this phase of the case. The view generally adopted by the courts is that if there has been permanent impairment or loss of earning capacity, in deciding the amount of damages to be awarded, evidence is not restricted to that of the earnings of the injured person at the time of the injury; that upon the issue of the amount of recovery in an action for personal injury, evidence as to earnings for a

reasonable period before the injury may be received but courts disagree as to what constitutes a reasonable time and there is no certain length of time that determines what is a reasonable period in this regard but this must be considered and decided upon the circumstances of each case; and that whether or not evidence of this character is too remote in time to be admissible is generally for the trial court to determine in the exercise of a sound discretion. The purpose of proof of past employment and earnings in litigation of this character is to assist the jury to determine what the future earnings would have been but for the injury. Any prior continuous, as distinguished from temporary, employment and its compensation which may fairly and legitimately throw light upon what the probable earnings would have been is admissible. There is no definitive rule as to time and subject matter of such inquiries.

In Yost v. Nelson, 124 Neb. 33, 245 N. W. 9, it was contended by defendant that the plaintiff was permitted to recover for earning capacity in an occupation in which he was not employed at the time of the accident. The proof showed that plaintiff was by occupation a lineman and that his duties consisted of working on poles and installing wires and equipment. At the time of the accident he was not engaged in that occupation but was assisting in the survey of a gas pipe line for a compensation less than the reasonable wages of a lineman. He was disabled from resuming his occupation as a lineman by the injuries he received. The trial court instructed the jury that in fixing the amount of damages they could take into consideration any impairment shown by the evidence in plaintiff's earning capacity. This court approved the submission made of the case by the district court and announced: "Diminution of earning capacity is not, of necessity, measured by its diminution in the particular calling in which plaintiff was engaged at the time of the injury, or by the amount of wages which he was then receiving; hence, plaintiff may show

that he was capable of earning more than he was earning at the time of the injury, and the jury may consider what plaintiff might have been able to earn but for the injury in any employment for which he was fitted."

In Pawlicki v. Detroit United Ry., 191 Mich. 536, 158 N. W. 162, the court said: "It is seldom in tort actions, and particularly for personal injuries, that exact data can be furnished or found by which to accurately measure the various elements recognized as composing adequate compensation for the loss or injury sustained. The law does not require impossibilities, nor demand a higher degree of certainty than the nature of the case admits. Reasonable latitude is therefore necessarily allowed in the range of inquiry as to damages in actions ex delicto, for which no fixed rule of exclusion or inclusion can be formulated * * *. And as bearing upon the destruction or impairment of plaintiff's earning powers his previous trade or vocation and what he was last able to earn while following it, his age, physical condition, and ability to work when injured, with any other facts which might tend to throw light upon that question, were admissible, 'not as furnishing an arbitrary measure of damages, but as a guide or assistance in enabling the jury to exercise a sound and just discretion in determining the proper amount,' if any."

The circumstances considered in Miller v. Pillow, 337 Mich. 262, 59 N. W. 2d 283, were that the plaintiff engaged in the restaurant business in 1948 and was injured in an automobile accident on July 30, 1950. He was then 54 years of age. He sought the recovery of damages for his injuries which, as he asserted, permanently impaired his ability to perform remunerative work. He produced evidence at the trial that before engaging in the restaurant business he worked at farm labor, as a stationary engineer, an employee in a paper mill, and as a driver of a gasoline tank. The court said: "Testimony was offered as to wages customarily paid

in such lines of employment, evidently on the theory that plaintiff, had he not been injured, might have engaged in any of the various lines of employment in which he had had experience previously, and might have earned wages therein as an ordinary laborer. Objections were made to such testimony on the ground that plaintiff was at the time of the accident operating a restaurant, and that proofs as to his loss of earning ability should be confined to that character of work. The objections were overruled and the jury was permitted to consider the testimony for its bearing on the general issue as to plaintiff's loss of earning ability. * * * Certainly the testimony as to the different kinds of labor in which plaintiff had engaged was competent. * * * Being competent to pursue various lines of employment, no reason is apparent for precluding him from showing what he might earn in different kinds of labor that he had performed in the past, and which he would have been capable of performing in the future had he not been injured by defendant's negligence. There was no error in the admission of the testimony in question."

It is stated in Grand Trunk Western Ry. Co. v. Reddick, 160 F. 898: "Upon the question of the damages sustained by the wife and children of a person killed by reason of his death, it was not error to permit the health, character, and earning capacity of the deceased to be shown for the period extending back from the time of his death to his young manhood; and in such connection evidence showing his earnings during the time of a partnership formed for carrying on his trade as a skilled workman 15 years before his death was admissible."

In Oakes v. Maine Central R. R. Co., 95 Me. 103, 49 A. 418, testimony was admitted, over objections, as to the wages the deceased received as a milliner 11 years before her death. That was her last employment. The court approved the reception of the evidence by this language: "The damages in this class of cases can

never be the subject of precise mathematical demonstration or calculation. They are based upon the probabilities of the future, which can only be shown by the facts of the past. Evidence is received in regard to many matters which in other actions for personal injuries are irrelevant or immaterial. * * * The earning capacity of the deceased was an important consideration, and this necessarily included not only her physical ability to labor, but the probabilities of her being able to obtain profitable employment. * * * Evidence of the wages she received the last time she was employed at that trade was properly admitted as tending to show whether such an effort, if made, would be successful; not as a direct basis for computing her earnings, or the value of her life at so much per week; but as showing an ability and capacity on her part to obtain continuous, profitable employment, should she be deprived of the help of her husband and thrown upon her own resources for the support of herself and her child."

The plaintiff in Germ v. City & County of San Francisco, 99 Cal. App. 2d 404, 222 P. 2d 122, went to California in 1942. Prior thereto he had worked with considerable lack of continuity in underground mining in Minnesota and as a laborer in the car department of a railroad. During a period of about 3 years after he reached California his earnings for working in a shipyard and as a farm laborer were about $800. He was injured in an accident in the year 1945. He was then unemployed and was living on charity in an institution where he had enrolled as early as November 1943. He was permitted to testify in the action occasioned by his injury his estimate of his earnings during the 8 years previous to his injury. The propriety of this testimony was contested. The court said: "The earnings prior to the injury are admissible as evidence of the extent to which the earning capacity of the plaintiff has been impaired by the injury. * * * the best method of proof of pecuniary loss is testimony of the plaintiff as to his

earnings for a number of years immediately prior to the accident. * * * There is no express limitation upon the time which this testimony may cover. The remoteness of the time affects the weight of the testimony and not its admissibility. The fact that the injured person was not employed at the time of the accident does not necessarily deprive him of the right to compensation for the loss of his earning capacity."

The Texas court in El Paso Electric Ry. Co. v. Murphy, 49 Tex. Civ. App. 586, 109 S. W. 489, observed: "Loss of or impairment of earning capacity is not always easy of calculation; it involves an inquiry into the value of the labor, physical or intellectual, of the person injured, before the accident happened to him, and the ability of the same person to earn money by labor, physical or intellectual, after the injury was received. Any evidence reasonably tending to show, either by itself or in connection with other evidence, what loss or impairment of such capacity has been sustained by the injured party, is relevant to the issue. * * * and evidence that one earned a salary of a certain amount, though years before he was injured, if it be shown that he possessed the same qualities just before he was injured as he did when he made such earnings, is, we think, admissible as tending to show what his earning capacity was when he was injured, its weight and probative force to be determined by the jury. For all evidence tending to show the character of the injured party's ordinary pursuits and the extent to which the injury complained of prevented him from following those pursuits is pertinent to the issue of impairment of earning capacity."

Grocers Supply Co. v. Stuckey (Tex. Civ. App.), 152 S. W. 2d 911, involved a claim for personal injuries received by plaintiff as the result of a collision of two motor vehicles on October 20, 1939. The plaintiff produced evidence of his earnings from October of 1929 to April of 1930. Its competency was contested. The court said:

"That testimony cannot be said to have had no advisory effect in enabling the jury to determine the extent of the appellee's earning-power, even 10 years later; that is the principle upon which evidence is receivable of past earnings of one who, by the negligence of another, has been deprived of a part or all of his earning capacity, rather than as having a tendency to, in itself, establish a fixed measure of damages for such a loss—the objective being to thereby furnish the jury a predicate from which they can fairly determine the extent of any shown impairment of earning capacity; indeed, this principle is so well settled that further discussion of it is foreborne."

It is stated in Yuncke v. Welker, 128 W. Va. 299, 36 S. E. 2d 410: "In an action to recover for personal injuries the damages are unliquidated and indeterminate in character, and the assessment of the amount is generally for the jury. * * * The only limitation which the law imposes is that the damages be fairly compensatory and not such as to show partiality, prejudice or misconduct upon the part of the jury. * * * In a personal injury case no rule of law fixes the measure of damages; the law leaves the amount of damages for tort to the sound discretion of the jury. * * * The court, over objection of the defendant, permitted the plaintiff to testify concerning the amount of his earnings as a carpenter within a period of five years prior to the time of his injury. The defendant objects to this evidence as being too remote in time * * *. This contention is not well founded. Whether evidence is too remote in time to be admissible is generally for the trial court to determine in the exercise of a sound discretion. Evidence, 20 Am. Jur. 243; 10 R. C. L. 926; Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216; Raymond v. Flint, 225 Mass. 521, 114 N. E. 811. It does not appear that the admission of this evidence amounted to an abuse of discretion. This Court, in dealing with this subject, has said that an abuse of discretion is more likely to result from

excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material. State v. Yates, 21 W. Va. 761." See, also, Kohl v. Unkel, *ante* p. 257, 79 N. W. 2d 405; Annotation, 130 A. L. R. 164; 25 C. J. S., Damages, § 87, pp. 620 and 625; 15 Am. Jur., Damages, § 338, p. 777; Heinrich v. Ellis, 113 Ind. App. 478, 48 N. E. 2d 96; Southern Ry. Co. v. Stockton, 106 Va. 693, 56 S. E. 713; Peterson v. Seattle Traction Co., 23 Wash. 615, 63 P. 539, 65 P. 543, 53 L. R. A. 586; Skramstad v. Miller, 78 N. D. 450, 49 N. W. 2d 652; District of Columbia v. Woodbury, 136 U. S. 450, 10 S. Ct. 990, 34 L. Ed 472.

There is respectable authority for the view that when it is established that a party has suffered damage, as it is in this case, a liberal rule should be applied in allowing a jury to determine the amount, and that, given proof of damage, uncertainty as to the exact amount does not justify a denial of all recovery. The fact that the amount of damage may not be susceptible of exact proof or may be in a degree uncertain or difficult of ascertainment should not be a bar to any recovery. Smith v. Mendonsa, 108 Cal. App. 2d 540, 238 P. 2d 1039; California Lettuce Growers v. Union Sugar Co., 45 Cal. 2d 474, 289 P. 2d 785, 49 A. L. R. 2d 496; Colvin v. Powell & Co., Inc., *ante* p. 112, 77 N. W. 2d 900.

It is asserted by appellant that appellee had "reached beyond 50 years of age"; that he was not active in the "welding business for more than 5 years immediately preceding the accident"; and that he had abandoned the trade of welding for the status of a storekeeper. Appellant too liberally interprets the proof in his favor. Appellee discontinued his trade as a welder less than 3 years before the accident. There is no other indi-

cation that he had abandoned it with the intention of not returning to it. He was 49 years old when injured and not "beyond 50 years of age."

The facts in Peterson v. Seattle Traction Co., *supra,* were that plaintiff testified he worked as a deck hand on a steamboat for about 6 years ending 3 years before the day of the accident. The defendant claimed that the plaintiff had not been working on a steamboat for 3 years and did not claim to intend to return to that calling; that it could not be regarded as his occupation, whether present or prospective, when he received the injuries; and that his earnings as a steamboat hand had nothing to do with the question of how much his physical impairment due to his injuries might deprive him of earning. The court said: "In an action for damages for injuries occasioned by the negligence of defendant, it is admissible for plaintiff to show what wages would be open to him in a business he understood, though he had not followed it for three years, but which he would have the right and ability to resume, were it not for the injuries he had received."

In Galveston, H. & S. A. Ry. Co. v. Harling (Tex. Civ. App.), 208 S. W. 207, plaintiff testified that during a period of years, 3 to 10 in number, extending back from 2 years prior to the injuries of which he complained, his earnings were $4,000 to $10,000 per year. He was then resident in Boston, Massachusetts. Two years before the accident in which he was injured he removed to Houston, Texas, and engaged in a much less remunerative occupation. The evidence of his earnings in Boston was approved by this language: "The testimony objected to was admissible, 'not as furnishing a means of measure of damages, but as a guide or assistance in enabling the jury to exercise sound and just discretion in determining the proper amount.' It was proper to show what kind of remuneration would be open to the plaintiff in a business he understood, and which he would have the right to resume, were it not for the in-

juries which prevented him from again entering that business." That case was affirmed by the Commission on Appeals of Texas and its action was approved by the Supreme Court of that state. Galveston, H. & S. A. Ry. Co. v. Harling (Tex. Com. App.), 260 S. W. 1016.

In El Paso Electric Ry. Co. v. Murphy, supra, this language appears: "It must be observed that the matter to be determined is not what he actually earned before his injury, but what his earning capacity actually was, and to what extent that capacity has been impaired. For whatever capacity he had for earning money before the injury, whether he exercised it or not, was his, and he was entitled to it unimpaired by injury wrongfully inflicted by another. * * * The fact that his capacity could not have been employed in the same business in El Paso that it was in Corpus Christi, did not affect or lessen it; for * * * it existed there unimpaired just as it did before he moved from Corpus Christi. And if he had chosen to employ it in the conduct of such business he would have been free to carry it where such business and employment could be found. * * * we cannot perceive that the remoteness of time and space where he drew such salary, from where he was injured would render the testimony complained of inadmissible. It might not have the same probative force that it would had it been shown that he was earning a salary of that sum at the time his injuries were inflicted. But that would go to the weight of the evidence, to be determined by the jury, rather than its relevancy, to be decided by the court." See, also, Germ v. City & County of San Francisco, supra; Pawlicki v. Detroit United Ry., supra; Annotation, 130 A. L. R. 164.

Complaint is made by the appellant that the petition did not specially assert that appellee "could not engage in the former calling of welding." This is understood to be a contention that a claim of damages for loss of earning capacity caused by negligence must be specially pleaded or it may not be established by evi-

dence. The specific allegation of damages in the petition is that appellee was before he was injured 48 years of age, in good health, capable of earning in excess of $5,000 a year, and that as a proximate result of negligence of appellant, as detailed by appellee, he had been damaged in a specified gross amount. Appellant made no request for a more specific statement than that pleaded in the petition. In an action for personal injury plaintiff may recover all the damages proximately caused by the tort under a general allegation of the whole amount of the damages caused, including any damages for impairment of his capacity to earn money. Nye v. Adamson, 130 Neb. 887, 266 N. W. 767; Carlile v. Bentley, 81 Neb. 715, 116 N. W. 772.

The experiences of appellee as a welder were not on special occasions or during temporary employment. They were continuous throughout a period of 25 years and to within less than 3 years of the time he was injured. The last years of his activity in that line of work were in the community where the accident occurred which caused his disability. He was able to have continued to pursue his trade but for the injury appellant caused him. The trial court was correct in admitting evidence of the earnings of appellant resulting from his engagements as a welder, evidence of the reasonable wages or compensation of a welder in the community in Nebraska where appellee had worked at his trade, and in the giving of the instruction on this subject to the jury.

There is evidence that when the collision of the automobiles occurred the wife of the driver of the Embree car was thrown against and through the windshield of the car. She was permitted while testifying at the trial to say that she received serious injuries. The trial court explained at the time that her testimony was admitted not for the purpose of showing what her injuries were but what her condition was generally. Likewise Embree testified that he was shaken up and bruised on

his side and knees. The trial judge commented that he permitted this "as a matter of showing what the situation was." The admission of this testimony is cause of appellant claiming prejudicial error. Evidence of this character is permissible in the discretion of the court as tending to show the force of the impact and the extent of the injuries inflicted upon the plaintiff.

The following appears in Day v. Banks (St. Louis Court of Appeals), 143 S. W. 2d 68: "Defendant next complains that the court erred in permitting plaintiff's witness James F. Day to testify that he had received a broken jaw and minor bruises, and that his wife had sustained internal injuries as a result of the accident. Defendant contends that the introduction of such testimony was irrelevant to the issues and created sympathy for plaintiff because the witness and the witness' wife were the father-in-law and mother-in-law, respectively, of plaintiff. We think the evidence complained of was competent and relevant to show the violence of the collision, thereby accounting for the injuries sustained by plaintiff. The court did not err in overruling defendant's objection thereto." See, also, Johnson v. McRee, 66 Cal. App. 2d 524, 152 P. 2d 526; 9C Blashfield (Perm. ed.), Cyclopedia of Automobile Law & Practice, § 6197, p. 312.

The present worth table was offered in evidence. Pp. 1504-1505, R. R. S. 1943. The offer was made by counsel for appellee at the suggestion of counsel for appellant; but after the offer was made, counsel for appellant voiced the objection that it was immaterial. The table was received in evidence. Complaint is now made of this. It has no validity because counsel for appellant was instrumental in inducing the offer and the action of the court in reference to it and for the reason that the record recites that the contents of the table were not made known to the jury at the time it was admitted in evidence and the record fails to show submission of the table to the jury at any time.

The jury was advised by the court that any allowance made by it on account of impairment of the earning capacity of appellee should be the present value of the difference between the amount he would reasonably have been able and expected to earn if he had not been injured and the amount he is and will be able to earn because of his reduced capacity, if any, resulting from the injury he suffered. The court told the jury that the present valuation of a sum of money payable in the future is the amount that sum is worth if paid now. The court, by example, told the jury that the present value of $1 due in 1 year at 6 percent could be found by dividing $1 by $1.06. There was no proof of the rate of discount which should be applied and the jury was not directly charged to find what the rate of discount would be for the period involved. Appellant claims such evidence and instruction were required. He did not propose such an instruction.

The court in Chesapeake & O. N. Ry. Co. v. Adams, 207 Ky. 668, 269 S. W. 1009, said with reference to this subject: "As the Halloway case (246 U. S. 525) holds that the jury cannot be tied down in estimating the present cash value by any fixed rate of interest or any specific period of time, it would seem that about all that could possibly be done in this connection that would at all be helpful would be to submit a mathematical formula to the jury whereby, after determining the rate of interest to be applied and the period of expectancy to be enjoyed, they could work out the discounted value. That this cannot be done practically is clear. Such a mathematical formula is not easy of application and when accurately applied involves the knowledge of more mathematics than can always be found in an ordinary collection of laymen. Jury trials must in the nature of things be conducted along practical lines, and we believe the better rule to be for the parties, if they so desire, to introduce evidence to show what, under the varying conditions of the evidence, the present value

of the expected pecuniary benefits may be, and then leave it to the jury to determine from this evidence what such present value is. In the absence of such evidence, the jury, knowing as men of common sense that a present value of a future fixed sum is a discounted value, must be trusted, as they are trusted in many other respects, to ascertain in their own way what this discounted value is. As the offered instruction would not have helped the jury to decide this issue, and as it told them only what as men of common sense they knew already, it was not error to refuse to give it."

In Western & Atlantic R. R. v. Lochridge, 39 Ga. App. 246, 146 S. E. 776, the court said: "Interest rates and other forms of returns on money safely invested are matters of such common knowledge that intelligent jurors may be presumed to be able to make proper allowance therefor in estimating the present value of a sum of money payable in the future, though no evidence upon that subject is introduced." The conclusion of that court was approved by the Supreme Court of Georgia, 170 Ga. 208, 152 S. E. 474.

In Vicksburg & Meridian R. R. Co. v. Putnam, 118 U. S. 545, 7 S. Ct. 1, 30 L. Ed. 257, the court said: "In order to assist the jury in making such an estimate (a fair recompense for the loss), standard life and annuity tables, showing at any age the probable duration of life, and the present value of a life annuity, are competent evidence. * * * But it has never been held that the rules to be derived from such tables or computations must be the absolute guides of the judgment and the conscience of the jury."

In Coast S. S. Co. v. Brady, 8 F. 2d 16, the court said: "But we are of opinion that the charge is to be construed as merely explaining the method of ascertaining the present value of money payable in the future, and as committing to the discretion of the jury such use of the annuity table as they might consider proper in connection with all the other evidence in the case relating

to the impairment of earning capacity." See, also, Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F 367. Counsel has not directed the court to any decision which decides that evidence of the rate of discount which should be applied in such a situation is indispensable. The contention of appellant in this regard may not be sustained.

The evidence is without dispute that appellee was seriously injured by the collision of the automobiles; that he has been and will be because of the injuries wholly and permanently disabled; that he has been the victim of pain and suffering continuously since the accident; and that he has submitted to necessary surgical operations and consideration has been given to another operation in an attempt to relieve him from pain and suffering but that it is not and cannot be known whether the operation will accomplish the result desired. The record abundantly establishes within reasonable certainty that future pain and suffering will be experienced by appellee. This is all the law requires. Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643. The contention of appellant that the trial court was wrong in permitting the jury to consider future pain and suffering by appellee in fixing the damages in this case has no support in the record.

The failure of the district court to include in the charge to the jury the subject matter stated in request No. 12 made by appellant concerning the care required of the operator of a motor vehicle on the wrong side of a road has no significance since the jury found that Embree was not operating his automobile on the wrong side of the highway at the time of the accident. This is implicit in the verdict of the jury.

The judgment should be and it is affirmed.

AFFIRMED.