MARGARET J. CANTARA *vs.* MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk.    May 23, 1974. — February 21, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Negligence,* Bus.    *Practice, Civil,* Variance.    *Evidence,* Impairment of earning capacity, Remoteness.    *Words,* "Jolt."

Evidence that a woman passenger, walking to the door of a bus as it approached her stop, was thrown back about six feet by a sudden jolt and that she fractured her left femur, as well as expert medical testimony that considerable force would be required to cause such a fracture, warranted an inference that the jolt was an acceleration of an extraordinary and unusual nature and that the bus was operated in a negligent manner. [82-86]

There was no material variance between allegations in a declaration that the plaintiff was injured on November 22 when a bus on which she was riding came to an abrupt stop at a station and proof that the accident occurred on November 26 at a temporary station just outside of the bus station and that the plaintiff was thrown backwards toward the rear of the bus. [86-87]

At the trial of an action for injuries sustained in an accident, evidence of the plaintiff's past wages was not too remote to be admissible on the issue of her earning capacity where the wages had been earned seven months before the accident, the plaintiff had held the same position for ten years, and these wages were the last earnings of the plaintiff prior to the injury. [87-89]

The fact that there was conflicting evidence as to whether the plaintiff's earning capacity had been diminished in the seven-month in-

terval between her last employment and the accident in which she
was injured went to the weight and not to the admissibility of evi-
dence of her past earnings. [89-90]

TORT.    Writ in the Superior Court dated August 18,
1972.

The action was tried before *Mitchell, J.*

*James G. Fay (Robert H. Flynn* with him) for the
defendant.

*George R. Halsey* for the plaintiff.

ROSE, J.   This is an action of tort seeking recovery
for personal injuries sustained by the plaintiff while she
was a passenger on a bus owned and operated by the
defendant (MBTA). The jury returned a verdict for the
plaintiff.

The defendant raises three contentions by its bill of
exceptions.[1] It argues that the trial judge erred in denying
the defendant's motion for a directed verdict at the con-
clusion of the evidence, first because there was insufficient
evidence to warrant a finding of negligence, and second,
because there was a fatal variance between the pleadings
and the proof. The third contention concerns the correct-
ness of a ruling by the trial judge allowing the plaintiff to
testify as to wages which she had earned when last em-
ployed, approximately seven months prior to the date of
the accident.

1. The plaintiff, a passenger on an MBTA bus, while
walking to the door of the bus as it approached her stop
was thrown to the floor by a sudden jolt of the bus. She
sustained a fracture of the neck of her left femur just below
the hip.

The area of tort law dealing with jerks, jolts, and lurches
of common carriers is well formulated.[2] Absent direct evi-

---

[1] The exceptions raised in a second bill are either expressly waived
or treated as waived because not argued.

[2] See generally, Martin and Hennessey, Automobile Law and Prac-
tice, § 649 (1967); Bishop, Prima Facie Case, Proof and Defense, § 598
(1970).

dence of negligence, a verdict for a passenger is warranted in a case wherein he alleges personal injuries caused by reason of a jerk, jolt, or lurch of the carrier only if the evidence warrants a finding that the jerk, jolt, or lurch was of such an unusual or extraordinary nature that the negligent operation of the vehicle can be inferred therefrom. *Work* v. *Boston Elev. Ry.* 207 Mass. 447, 448-449 (1911). *Carson* v. *Boston Elev. Ry.* 309 Mass. 32, 35-36 (1941).[3]

In cases of this sort, mere adjectives, however vivid, used by the plaintiff to describe the movement of the car, are not evidence of negligence. *Anderson* v. *Boston Elev. Ry.* 220 Mass. 28 (1914). *Convery* v. *Eastern Mass. St. Ry.* 252 Mass. 418, 421 (1925). *Binder* v. *Boston Elev. Ry.* 265 Mass. 589 (1929). *Seidenberg* v. *Eastern Mass. St. Ry.* 266 Mass. 540 (1929). Evidence of physical facts showing the force of the jerk or jolt must be presented. *Sullivan* v. *Boston Elev. Ry.* 224 Mass. 405, 407 (1916). *Convery* v. *Eastern Mass. St. Ry., supra.*

The key physical factors in this case, and the only evidence on the record from which the force could be inferred are (1) the distance which the plaintiff was thrown and (2) the force of the fall which could be inferred from the severity of the injury.

From the testimony the jury could have found that when the bus slowed down upon approaching the plaintiff's station, she arose from her seat and took a couple of steps forward. The bus gave what the plaintiff described as a

---

[3] Even though sufficient evidence is introduced as to the unusual or extraordinary nature of the jerk, lurch, or jolt, a verdict for the defendant is mandated where there is no showing by the plaintiff that the sudden stop was not necessitated by a traffic emergency. *Timms* v. *Old Colony St. Ry.* 183 Mass. 193, 194 (1903). *Cuddyer* v. *Boston Elev. Ry.* 314 Mass. 680, 682-685 (1943). The plaintiff does not have such a burden, however, when the vehicle is stopping to allow passengers to alight. *Black* v. *Boston Elev. Ry.* 206 Mass. 80, 81-82 (1910). But see *Cuddyer* v. *Boston Elev. Ry., supra,* at 682. In any event, the plaintiff here testified that she was able to see out of the front window of the bus and that she observed no obstruction in front of the bus requiring the jolt. See *Weiner* v. *Boston Elev. Ry.* 262 Mass. 539, 541-542 (1928).

"sudden jolt."[4] The plaintiff tried to "stay herself" but was thrown to the floor of the bus, landing in the middle of the aisle about two feet behind where she had been seated. The jury could have found from this testimony that the plaintiff had proceeded four feet forward from her seat before she was thrown backward, and therefore that the plaintiff was thrown a distance of six feet.

The jury could have inferred from the direction and distance of the plaintiff's backward flight that the movement of the bus, which she had described as a "jolt", was in fact an acceleration of an extraordinary and unusual nature. The jury had the right to draw inferences of direction and movement from the evidence of the physical facts.

A second element of proof was presented by Dr. Robert J. Boyd, who testified that it would require considerable force to cause the particular injury which the plaintiff sustained. Dr. Boyd testified (a) as to the precise nature of the injury, a fracture in the area under the head of the femur in the neck region, (b) that the bone was a major one, (c) that this type of fracture requires a "considerable force to occur," (d) that this would be true even in view of the fact that the plaintiff was sixty-two years of age, and (e) that additional less severe injuries were suffered by the plaintiff.

The above evidence showing the violence of the plaintiff's fall was sufficient to warrant an inference that the jolt or acceleration was unusual or extraordinary, and that the bus was operated in a negligent manner. In *Convery* v. *Eastern Mass. St. Ry.* 252 Mass. 418 (1925), where the plaintiff was thrown six feet against the back wall of a streetcar, suffering a broken leg and injuries to her shoulder

---

[4] It has been held that the word "jolt" has the specific meaning of an up and down movement. See *Wills* v. *Belger*, 357 Mo. 1177, 1186 (1948). See also *Work* v. *Boston Elev. Ry.* 207 Mass. 447, 448 (1911). However, such a limited meaning is not common knowledge, and common parlance is likely to employ "jerk", "jolt", and "lurch" interchangeably. See *Crenshaw* v. *St. Louis Public Service Co.* 52 S.W. 2d 1035, 1040 (Mo. App. 1932), overruled on other grounds *Duncker* v. *St. Louis Public Service Co.* 241 S.W. 2d 64, 68 (Mo. App. 1951).

and arm, the denial of a motion for a directed verdict was upheld. The proof presented by this plaintiff establishes substantially as strong a case as that held sufficient in *Convery*.[5]

In *Hallinan* v. *Worcester Consol. St. Ry.* 273 Mass. 27 (1930), the court ruled that testimony that a three-year old was pulled from his mother's grip and thrown against a seat, that the mother was thrown five or six feet, suffering bruises, and that another lady was thrown three feet, brought the case "within the principle stated in" the *Convery* case.

Evidence similar to that in the case before us was presented in *Warren* v. *Boston Elev. Ry.* 259 Mass. 226 (1927). There, the plaintiff was thrown five or six feet, sustaining a fracture at the base of the neck of the femur, the same injury as that suffered by the plaintiff in this case. Additional evidence in the *Warren* case that the plaintiff had a firm grip on a railing and that another passenger was also thrown does not detract from the thrust of the principle that the severity of the injuries and the distance the victim was thrown may be sufficient to warrant an inference of an unusual jerk or jolt.

The defendant directs our attention to the case of *Desautels* v. *Massachusetts Northeastern St. Ry.* 276 Mass. 381 (1931). In that case evidence that the plaintiff was thrown four or five feet backward with sufficient force to dislocate the plaintiff's knee — the force was described as "severe", "quite forceful," and "substantial" — was found insufficient to let the case go to the jury. However, the injury was described by the court as only a "slight dislocation of her knee," and the *Convery* case was distinguished on the basis of the greater distance the plaintiff had been thrown in that case. *Id.* at 385.

A verdict was also directed for the defendant in *Mathieu*

[5] There was an additional quantum of evidence in the *Convery* case in the form of expert testimony on the proper acceleration of a streetcar. 252 Mass. at 421-423. However, in finding that there had been sufficient evidence to go to the jury, the court relied essentially on the evidence of the physical facts concerning the plaintiff's fall. *Id.* at 421.

v. *Springfield St. Ry.* 328 Mass. 13 (1951), in which the plaintiff was thrown to the floor and suffered a fractured hip. The court pointed out that although the plaintiff was holding a strap, there was no evidence that her grip was firm, as to how far in feet she was thrown, or as to the effect of the jolt on others.

"The difference between . . . [a usual and an unusual jerk or jolt] is one of degree. The difference being one of degree and one of degree only, it is of necessity a difficult matter in practice to draw the line between these two sets of cases in which opposite results are reached. No general rule can be laid down. Each case must be dealt with as it arises." *Work* v. *Boston Elev. Ry.* 207 Mass. 447, 448 (1911). Although the process of evaluating the physical facts is a difficult one, we are of the opinion that the proof on this element was sufficient to allow the case to go to the jury. Evidence of an extraordinary or unusual jerk, jolt or lurch, in conjunction with "evidence of the accident and of the plaintiff's due care are *prima facie* sufficient to establish liability if no proof that it has not been guilty of negligence is offered by the carrier." *Nolan* v. *Newton St. Ry.* 206 Mass. 384, 388 (1910). See also *Hallinan* v. *Worcester Consolidated St. Ry.* 273 Mass. 27, 29-30 (1930). The defendant offered no evidence to show that the violent movement of its bus had a non-negligent cause. The motion for a directed verdict on the ground that negligence of the defendant was not established was properly denied. On this point, this is the opinion of a majority of the entire court. See Rule 1:18 of the Appeals Court (1972), 1 Mass. App. Ct. 892.

2. The defendant also seeks a directed verdict on the ground that a variance exists between the evidence and the pleadings. The defendant alleges three specific variances.

a) The plaintiff alleged the accident occurred on November 22 and proved it occurred on November 26.

b) The plaintiff alleged the bus stopped at Wood Island Station and proved it stopped at a temporary station just outside the Wood Island Station.

c) The plaintiff alleged the bus came to an "abrupt

stop" and yet proved she was thrown backwards towards the rear of the bus.

The variances alleged are immaterial. The proof was essentially within the scope of the pleadings. See, for example, *Stoney* v. *Soar*, 322 Mass. 408, 411 (1948), wherein the claim of a variance was rejected because the differences as to time and place were found not to be material to any substantial issue in the case. To require a finding for the adverse party, a variance must be material or substantial, requiring different kinds and degrees of proof and the application of different rules of law. *Shaw* v. *Worcester R.R.* 8 Gray 45, 72 (1857). No such material or substantial variance existed in this case, there being no showing that the theory of the case and the facts to be proved were not plainly made out. As stated in *Brogie* v. *Vogel,* 348 Mass. 619, 622 (1965), "There was no prejudice, or reasonable possibility of prejudice . . . from any minor discrepancy between the declaration and the proof. . . . [The defendants] were put fully on notice of the circumstances and premises concerning which proof was to be offered."

3. The defendant urges that it was error to admit certain of the plaintiff's testimony (bearing on the measure of damages) as to wages earned by her during her last period of employment which ended approximately seven months prior to the date of the accident. It is asserted that this evidence was too remote in time from the date of the accident to assist in establishing the plaintiff's earning power at the time of the accident. The defendant also argues that the evidence was incompetent because at the time of the accident the plaintiff suffered from a hearing disability and no longer possessed the physical capacity to perform work along the lines of her former employment.

The element of damages in question is compensation for diminution of earning power. Evidence of loss of wages provides a practical measure of the loss of earning power. *Doherty* v. *Ruiz,* 302 Mass. 145, 146 (1939). Earning power is to be measured as of the time of the accident. See *O'Brien* v. *Look,* 171 Mass. 36, 41 (1898).

While it is essential to prove the earning capacity of the

injured person at the time of his injury, past earnings may be probative of earning ability at the time of the injury. Although there has been no express statement in Massachusetts on this point, it appears from the limited statement of facts in the *Doherty* case, where the plaintiff had been unemployed for over two months prior to the date of the injury, that evidence of *past* earnings was admitted to prove loss of earning power.[6] *Doherty* v. *Ruiz, supra,* at 145-146. The cases in other jurisdictions disclose such evidence to be generally admissible. *Missouri Pacific R.R.* v. *Gilbert,* 206 Ark. 683, 687 (1944). *Central of Ga. Ry.* v. *Perkerson,* 112 Ga. 923, 927-928 (1901). *Miller* v. *McCoy Truck Lines, Inc.* 243 Iowa 483, 491 (1952). *Pawlicki* v. *Detroit United Ry.* 191 Mich. 536, 539-540 (1916). *Shepard* v. *Harris,* 329 S.W. 2d 1, 11 (Mo. 1959). *Jacobsen* v. *Poland,* 163 Neb. 590, 597-608 (1957). *Schwartz* v. *Camp,* 86 Pa. Super. 475 (1925). *Rooney* v. *Maczko,* 315 Pa. 113, 119 (1934). *McCandless* v. *Maguire,* 78 D. & C. (Pa.) 291, 296 (1951). The admissibility of evidence of past earnings is subject to considerations of remoteness in time,[7] and of changes in circumstances. *Central of Ga. Ry.* v. *Perkerson,*

---

[6] In *Marston* v. *Auto Laundries, Inc.* 356 Mass. 743 (1970), the plaintiff, subject to a showing of the circumstances attending his change of employment, was permitted to testify to his monthly salary five months before the accident. But that work was substantially the same as work performed by the plaintiff for another employer at the time of his injury, payment for the latter work being on a commission basis.

[7] The courts have, in the past, differed widely on what constitutes a reasonable time. Compare *Rooney* v. *Maczko, supra,* at 119-120 (evidence of earnings "a reasonably brief time" before the injury is admissible, but evidence of earnings "several years before . . . must be excluded as possessing too little probative value"), with *Lorenz* v. *Sowle,* 360 Mich. 550 (1960) (evidence of earnings seven years before the injury was admitted). See *Missouri Pacific R.R.* v. *Gilbert, supra,* at 687. See generally, *Jacobsen* v. *Poland, supra,* at 598-608; Annot. 130 A.L.R. 165-171 (1941); Annot. 81 A.L.R. 2d 728, 733 (1962).

However, "there have apparently been no recent cases holding evidence of prior earnings inadmissible against the defendant's objection of remoteness." Annot. 81 A.L.R. 2d 728, 734, n.l. (1962). See the extensive list of cases cited, at 734-735, in all of which evidence of past wages is reported as having been admitted over an objection of remoteness. In those cases for which the time between past employment and injury is noted, the period is greater than seven months.

*supra,* at 926-928. See *Jacobsen* v. *Poland, supra,* at 598-599; *McCandless* v. *Maguire, supra,* at 296; Annot. 130 A.L.R. 161, 166 (1941).

The question of remoteness is a matter within the sound discretion of the trial judge. *Yuncke* v. *Welker,* 128 W. Va. 299, 311 (1945). *Jacobsen* v. *Poland, supra,* at 599. See *Raymond* v. *Flint,* 225 Mass. 521, 524 (1917). The court in the *Yuncke* case, finding no abuse of discretion in the admission of testimony concerning the plaintiff's earnings as a carpenter within a period of five years prior to the time of his injury, stated "that an abuse of discretion is more likely to result from excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material." 128 W. Va. at 311-312.

In this case, where the wages had been earned only seven months prior to the accident, the plaintiff had held the same position for ten years, and these wages were the last earnings of the plaintiff prior to the injury, it was not an abuse of discretion by the trial judge to admit evidence of the plaintiff's past wages on the issue of her earning capacity.

The defendant argues further that circumstances had changed in the seven months between the time when the plaintiff last worked and the date of her injury. The defendant urges that the plaintiff was suffering from a hearing disability and that she was no longer physically capable of returning to her former employment.

"[W]here the evidence as to past earnings sought to be introduced relates to personal services of a character that the injured or deceased at the time of his injury or death was no longer capable of performing, it appears to be the rule that such evidence is not admissible, inasmuch as the amount of damages for loss of earnings or earning capacity is determined by the earning ability at the time of injury or death." Annot. 130 A.L.R. at 174, citing *Chicago & J.*

*Elec. Ry* v. *Spence,* 213 Ill. 220 (1904) ; *Central of Ga. Ry.* v. *Perkerson,* 112 Ga. 923 (1901).

In this case, the defendant presented evidence in the form of hospital records indicating that the plaintiff suffered from a progressive hearing loss which had begun many years before. The defendant argues that, prior to the accident, the plaintiff's hearing ability had deteriorated to the point where she was no longer capable of functioning as a store clerk. To the contrary, the plaintiff testified that she was physically capable of returning to her former employment. The question of the plaintiff's diminishing capacity goes to the weight of the evidence, and it was for the jury to determine whether the plaintiff's hearing loss reduced her earning power below what it had been when she last worked, seven months before.

*Exceptions overruled.*